HAMPTON *v.* STATE.

Opinion delivered December 16, 1899.

1. INDICTMENT—QUASHAL—PRACTICE.—Finding a second indictment on the testimony on which the first was based, without retaking the testimony, is an irregularity merely, and not ground for reversal of a judgment of conviction, though between the finding of the first and second indictments a member of the grand jury which found the first indictment had been excused, and another juror substituted. (Page 267.)

2. SAME—REMOVAL OF MORTGAGED PROPERTY.—Under Sand. & H. Dig., § 1868, making it a misdemeanor to remove mortgaged property from the county wherein the mortgage lien was created and exists, an indictment for removing mortgaged property from the county wherein the mortgage was recorded is not demurrable as failing to allege an offense within the local jurisdiction of the court; Sand. &. H. Dig., § 2082, providing that where the place of the crime is not named in the indictment, it shall be considered as charging the same as committed within the local jurisdiction of the court. (Page 268.)

3. WHERE MORTGAGE CREATED.—A lien by virtue of a mortgage may be created and exist, although the mortgage is not recorded; the statutory provision that a mortgage "shall be a lien on the mortgaged property from the time it is filed in the recorder's office for record, and not before," having reference only to its effect as to third persons. (Page 268.)

4. NEW TRIAL—TESTIMONY OF JUROR.—Under Sand. & H. Dig., § 2269, providing that "a juror cannot be examined to establish a ground for a new trial, except it be to establish as a ground for a new trial that the verdict was made by lot," testimony of a juror to show misconduct of another juror was properly excluded. (Page 272.)

Appeal from Desha Circuit Court, Watson District.

ANTONIO B. GRACE, Judge.

*C. H. Harding* and *W. S. & F. L. McCain*, for appellant.

· The indictment fails to allege a valid lien, because the mortgage is not alleged to have been recorded. Sand & H. Dig., § 5090. Before record, a chattel mortgage is not a lien. 1 Jones, Mort. § 11; 9 Ark. 112; Sand & H. Dig., § 5091; 43 Ark. 378. When a juror separates from his fellows, the burden is on the state to show the absence of any injury therefrom to defendant's case. 44 Ark. 119; 12 Ark. 782; 33 Ark. 317; 20 Ark. 36; 35 Ark. 118. It was error for the court to refuse instructions 1 and 2 asked by appellant. Intent is an element of this crime, and the burden is on the state to prove it. 32 Ark. 239; 49 Ark. 150; 54 Ark. 283. The grand jury had no right to find the indictment upon previous evidence. Sand. & H. Dig., §§ 2050, 2051, 2058, 2070.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appellee.

It was not necessary for the indictment to allege the recording of the mortgage. 65 Ark. 80. Where the separation of the jury occurs while the panel is being selected, the burden is on the defendant to show prejudice therefrom. 44 Ark. 119; 66 Ark. 545. The jurors themselves cannot be examined for the purpose of impeaching their own verdict. 13 Ark. 317; 29 Ark. 293; 59 Ark. 132. The court's instructions covered those refused to appellant.

BUNN, C. J. This is an indictment and conviction for removing mortgaged property, and the defendant appealed to this court.

The first objection of defendant insisted on here is that the indictment was not found upon any evidence. The facts upon which this objection is based are, as alleged by defendant, that, the indictment first found for the same offense having been quashed for some irregularity by the court, the matter was referred back to the grand jury for reconsideration. In the meantime, one of the grand jury had been discharged for good cause shown, and another competent person substituted in his place. On the second consideration of the subject by the grand jury as then constituted, the testimony was not retaken, but the testimony as already taken down before the grand jury

before the change in its composition, and upon which the first indictment was found, was used, and upon this testimony the indictment upon which defendant was tried was found. This irregular way of finding an indictment is not to be commended, and is not approved, but, unless other showing of prejudice to the defendant is made, we do not consider the error such as would justify a reversal of the judgment herein.

The motion to quash the indictment having been overruled, the defendant then demurred (1) because the indictment does not show that said alleged offense was committed within the jurisdiction of the court; (2) because the facts stated in the indictment do not constitute a public offense. This demurrer, as to both grounds, was overruled, and the defendant took his exceptions to the ruling of the court therein.

The indictment alleges the offense of removing from the county wherein the mortgage is alleged to have been recorded certain personal property described in the mortgage. The indictment charges that the defendant removed the property from the county wherein the mortgage was recorded. Under the statute, the particular crime consists in removing the mortgaged property from the county wherein the mortgage lien was created and exists. The allegation as to the place of record was improper, but it was only surplusage at last; for, where the venue is not laid in an indictment, the offense will be considered as having been alleged to have been committed within the local jurisdiction of the court in which the indictment is found, as will be referred to further on.

This disposes of the objection raised by the first ground of demurrer. And this also substantially disposes of the objection raised by the second ground of demurrer, in part; but the defendant's counsel contend that the mortgage, being unrecorded, created no lien upon the property, and that, therefore, it was no crime to remove the property as charged. This contention makes it necessary to go somewhat into detail, both as to the facts and the law applicable thereto.

The facts are substantially as follows, to-wit: On the 31st March, 1899, the defendant, being indebted to one W. H. Burnett in the sum of $175 or other large sum, agreed to give him

a mortgage on his cotton crop for the year and certain personal property to secure the payment of said indebtedness; and on that day he, Burnett and a notary public all met at the storehouse of Burnett, which we infer was in Dumas, where the case was tried, and the defendant had the live-stock to be included in the mortgage, and he then and there executed and delivered the mortgage to Burnett, after acknowledging the same before said notary public. Sometime afterwards another creditor of the defendant was pressing him for his debt, and, at the instance and solicitation of the defendant, Burnett paid off that debt, the defendant agreeing to secure him for the sum so paid out by Burnett for him; and then, taking the property upon which this additional security was to be given, he goes to the store-house of Burnett with it, and there he, Burnett, and the same notary public, after consultation over the matter, concluded to have the additional debt and additional security inserted in the mortgage, and the acknowledgment, to that extent, of the defendant was taken orally by said notary public, and this economical manner of making a mortgage, and taking an acknowledgment of the execution of the same, it is contended, renders the recording of the mortgage irregular and void, and, for the sake of the argument, we admit that it does, although we do not pass upon the question in fact.

In this way it is contended that the mortgage was never recorded, and upon that the further and real contention is that there was no lien on the property, since only a recorded mortgage creates a lien on the mortgaged property. The argument in support of that contention is this: That at common law a mortgage, of itself, created no lien; that, upon default of payment of the debt when due, the mortgagee became the absolute owner of the mortgaged property; that our statutes have made no change in this rule of the common law, and have made the record of the mortgage, and that alone, the basis of the lien; and that, without this recording, there is no mortgage lien. The only statute strictly applicable to this subject reads as follows, viz.: "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time it is filed in the recorder's office for record, and not before." The conten-

tion is that a mortgage unrecorded, not being a lien at common law, and not having been made so by statute, is no lien at all. But is it true that a mortgage created no lien at common law? It is true that at first, in courts of law, a mortgage was not considered a lien on the property mortgaged; but from almost the very beginning courts of equity began to oppose this dictum of the common law courts, and to assert that a mortgage was only a lien on the mortgaged property, and nothing more, in favor of the mortgagee, and, what was tantamount to it, that the mortgagor had the right of redemption after default, and that this right constituted an interest and estate in the property, of which he could not be deprived by forfeiture, but only by judicial determination and foreclosure. The controversy between the two jurisdictions soon grew to be strongly acrimonious, and so continued until the reign of James II, when the controversy was finally settled, and the theory of the equity court—that which has since prevailed in England and the American states—was held to be the true rule; that is, that the mortgagee has the legal title to the property, but only to a limited extent, and after default his legal right is a mere remedy, and that only, extending no further than as an aid in the collection of the mortgage debt, and that in so far courts of equity are to respect this legal right in control of the property and enforcement of the mortgage contract by foreclosure or otherwise. But the right of redemption, and the title growing out of it, were fixed rights, and had been from the beginning, however much the principle had been controverted. The only case to be cited in the English reports in which the old theory of the law courts were revived in after times was the case of *Casborne* v. *Scarfe*, 1 Atkins, 603, in 1737. But the defeat of the party reviving the old controversy was so signal, it is said, that no case of the kind has occurred since. But that a mortgage of itself creates a lien is so generally understood, and has so entered into our legislation and jurisprudence, that we are forced to the conclusion that all enactments of the legislative departments and all decisions by the courts are made with this theory in view, and that the act of the legislature quoted above had reference

solely to the lien as affecting third parties, and the declaration
of the courts that a mortgage, though unrecorded, is good be-
tween the parties, is the same as saying that it is as good be-
tween the parties in all respects and in all its incidents, when
unrecorded, as it would be as to third parties when recorded.
There was therefore no error in overruling the demurrer as to
its second ground.

In this connection, it is contended by defendant's counsel
that the decision of this court in the case of *State* v. *Barnett*,
65 Ark. 80, should be overruled, as announcing a doctrine un-
supported by authority; citing the cases of *Main* v. *Alexander*,
9 Ark. 112, and *State* v. *Harberson*, 43 Ark. 378. In the first
of these two cases, the syllabus on the subject reads: "A
mortgage is good between the parties, though not acknowledged
and recorded, but, under our registry act, it constitutes no lien
upon the mortgaged property, as against strangers, unless it is
acknowledged and recorded as required by the act, even though
they may have actual notice of its existence." That was a
case between parties to the mortgage and third parties or
strangers to it. Therefore it is not applicable to the facts of
the case at bar; nor are any comments of the courts on the
rule, as applied to that case, where third parties are involved,
to be regarded as any authority to a case like this one, where no
third parties are involved. The case of the *State* v. *Harberson*, 43
Ark. 378, was an indictment under the act of 1875, viz.: "Any
person or persons who shall hereafter remove beyond the limits
of this state, or of any county wherein the lien may be recorded,
property of any kind, upon which a lien shall exist by virtue of
any mortgage, deed of trust, or by contract of parties, or by oper-
ation of law, or who shall sell, barter or exchange or other-
wise dispose of any such property without the consent of the
person or persons in whose favor such lien shall have been
created or exists by law, or who shall secrete the same, or any
portion thereof, shall be deemed guilty of felony, and subject
to an indictment, and, upon conviction thereof, shall be sen-
tenced to hard labor in the jail and penitentiary house of this
state for the period of not less than one nor more than two
years, at the discretion of the jury trying the same." The

crime, under that act, consisted in removing from the county wherein the lien may be recorded the property upon which the lien existed. The language of the act evidently led the court in that case to the opinion that there must be a record of the lien, or else the offense did not exist.

The case of *State* v. *Barnett*, 65 Ark. 80, arose under the act on the subject approved March 7, 1893, (Sand. & H. Dig., § 1868), which is amendatory of the said act of 1875, and reads thus: "It shall be unlawful for persons to sell, barter, exchange or otherwise dispose of, or to remove beyond the limits of this state, or of the county in which a landlord's or laborer's lien exists, or in which a lien has been *created* by virtue of a *mortgage* or deed of trust, any property of any kind, character or description, upon which a lien of the kind enumerated above exists." We have italicized the distinguishing words. In the amendatory act, the crime consists in removing the property from the county wherein the lien was created and still exists. The change in the language is, of itself, very significant. At all events, the two cases were based upon two distinct statutes, and therefore there is not necessarily any conflict in the two decisions.

It is contended that one of the jurors in this case, contrary to the orders of the court, separated from his fellow jurors, and therefore the verdict should be set aside. It is charged that the panel was being made up, but not completed, when the court took a recess, probably for the night, and charged the selected jurymen not to separate, but that one or more of them did separate from the others. It does not appear that the order of the court was made at the instance of the defendant for any special reason, but only on its own motion. The court can use its discretion to permit the jurymen selected to separate before the panel is made up and sworn, and it would seem that it could as reasonably excuse a disobedience of its order against separation as it could make the order on its own motion in the first instance; but, without ruling on this point, the testimony offered by the defendant to show the separation and misconduct of the jurymen involved was the testimony of the jurymen themselves. The court refused to admit the testi-

mony, and this refusal is made one of the grounds of the motion for a new trial. There was no error in this. Section 2269, Sand. & H. Dig., reads thus: "A juror cannot be examined to established a ground for a new trial, except it be to establish as a ground for a new trial that the verdict was made by lot." No other testimony was offered on the subject. See *Wilder* v. *State*, 29 Ark. 293.

Another ground of the motion for the new trial was that the court refused to give instructions numbered 1 and 2 asked by the defendant, which are as follows: "No. 1. The jury are instructed that, before they can convict the defendant of the charge in the indictment, they must find from the evidence, beyond a reasonable doubt, that he removed said property from the county with the fraudulent intent to cheat the said W. H. Burnett of the debt secured by the mortgage. No. 2. The jury are instructed that, if they find the defendant removed said property from the county for any other purpose than a fraudulent purpose, but for business or honest purposes, then they will find for the defendant, or, should they entertain a reasonable doubt as to whether his purpose was honest or fraudulent, they will give the defendant the benefit of the doubt and acquit."

These two instructions were intended to cover the proviso clause of section 1868, defining the crime, which reads as follows: "Provided, such sale, barter, exchange, removal or disposal of such property be made with .the intent to defeat the holder of such lien in the collection of the debt secured by mortgage, laborer's lien or landlord's lien."

The court refused these instructions, but in lieu thereof gave the following on its own motion, to-wit: "If you find from the evidence that defendant removed the property mentioned in the mortgage from Desha county to Ashley county, without fraudulent intent, and in good faith to procure hands to work in his crop, or for any other honest business purpose, and return to Desha county without unnecessary delay, then you should find the defendant not guilty."

The court made the following addition to instruction No. 6, asked by defendant, and, so amended, gave it, to-wit. "No. 6. The jury are instructed that the allegation in the indict-

18

ment 'with the fraudulent intent' is a fact to be established by the testimony beyond a reasonable doubt, the same as any other material allegation in the indictment. Such intent, however, need not be proved by direct testimony, but may be established by circumstantial evidence, as in case of any other disputed fact."

It is contended that the two instructions refused were expressed in better language than the substituted instructions, and so much so that the refusal to give them was a reversible error, notwithstanding the giving of the substituted instructions. Under the general rule that one is presumed to have intended the consequences of his own acts, it is sufficient to charge that the act was committed feloniously, if a felony is charged, and the good motives of the act are left to be shown in evidence as a defense or in mitigation. The indictment in this case was all-sufficient in this respect. It is evident, however, that the instructions which are the subjects of this particular controversy were intended to apply to the evidence, under the peculiar proviso of the statute. It is contended that the refusal of the two instructions, and the giving of the others in lieu thereof, threw the burden too much on the defendant to show his honest purpose in removing the property as he did. Our view of it is, however, that the court instructed on the particular facts set up in the defense, and in so doing we think the jury were fairly presented with the law of that part of the case, and therefore there was no error.

The only remaining question is one of fact, whether or not the venue was proved. Proceeding upon the presumption that the mortgage was not in fact recorded, it appears that no venue was laid in the indictment; for the place of record is stated therein, and not the place where the lien was created and exists. This defect in the indictment is cured by statute (section 2082, Sand. & H. Digest), in which it is provided that where the place of committing the crime is not named in the indictment, it shall be considered as charging the same as committed within the local jurisdiction of the court.

The testimony as to the place where the mortgage was executed,—where the lien was created,—is more or less indefi-

nite.   The mortgagee and notary public who took the acknowledgment say that the mortgage was executed at Burnett's store, and the notary says that not only did he take the acknowledgment, but that he wrote the mortgagor's name to the mortgage, he being unable to write, and only made his mark, which was witnessed by the notary public.   The real indefiniteness of the testimony consists in failing to state expressly where Burnett's storehouse was.   That point, however, does not seem to have been controverted anywhere in the argument, nor to have been called particularly to the attention of the witnesses or to the court.   The almost necessary inference from all that was said is that this storehouse was in Dumas, the lawful place of holding the circuit court of Watson district of Desha county, or, at least, in the district.   This point being established, there is no real difficulty as to the proof of the venue.

HUGHES and RIDDICK, JJ., dissent .

RIDDICK, J.   I am of the opinion that the presiding judge, in refusing to give instruction number one asked by defendant, committed prejudicial error.   An allegation in the indictment was that the defendant removed the mortgaged property "with the felonious intent to defeat the said W. H. Burnett, the holder of said mortgage lien, in the collection of the sum of $175.95, the amount due the said W. H. Burnett on said mortgage debt on said 12th day of March, 1899, and secured by mortgage as aforesaid."   This allegation was material, and the testimony bearing on it was conflicting.   It was therefore important for the jury to clearly understand that this allegation that the defendant removed the property with the intent to defeat Burnett in the collection of his mortgage debt must be established by the evidence beyond a reasonable doubt before they could convict the defendant.

It was a matter of vital importance to the defendant that the jury should fully comprehend this; otherwise, they might convict upon proof of the removal only, without being satisfied of the felonious intent.   Appreciating this danger, and endeavoring to avoid it, his counsel asked the circuit judge to give the following instruction:   "The jury are instructed that,

before they can convict the defendant of the charge in the indict-
ment, they must find from the evidence, beyond a reasonable
doubt, that he removed said property from the county with the
fraudulent intent to cheat the said W. H. Burnett of the debt
secured by the mortgage."

This instruction was correct, but the judge refused to give
it, and the instruction he gave on this point does not, in my
opinion, present the question so clearly to the jury. The in-
struction he gave tells the jury that "the allegations in the in-
dictment 'with the fraudulent intent' is a fact to be established.
by the testimony beyond a reasonable doubt, the same as
other material allegations in the indictment." Now, al-
though the language used is rather awkward, a lawyer would
understand that the judge, by the phrase "the allegation in the
indictment 'with the fraudulent intent,' " meant the allegation
that the removal of the property was made to defeat Burnett in
the collection of his mortgage debt. But jurors are not law-
yers, and, as the language of the law is not always that current
in every day life, they do not always readily comprehend it.
The object of the instructions is not to present to the jury
questions of law or questions concerning the meaning of legal
terms, but to present questions of fact for their decision. For
this reason, instead of telling the jury in a general way
that "the allegation in the indictment 'with the fraudulent
intent' is a fact to be established beyond a reasonable doubt,"
he should have told them, as asked by defendant, that, before
defendant could be convicted, it must be shown beyond a
reasonable doubt that he removed the property with the
intention to defeat Burnett in the collection of his debt,
and that if, after consideration of all the evidence, they still
had a reasonable doubt on that point, they should acquit. He
did not do this, but forced the defendant to trial with only a
general statement of the law with reference to "the allegations
in the indictment with the fraudulent intent," leaving it for
the jury to determine what those allegations were to which he
referred. Now the awkward language used in this instruction
is doubtless due to an error in copying, and is probably no
fault of the learned trial judge, but, leaving out that defect,

the charge is too general.   Cases are often tried on general instructions of the kind given in this case, and when the defendant asks for none more specific no error is committed.   We say in such a case that if the defendant desired clearer and more definite instructions he should have asked them, and if he was prejudiced by the failure of the judge to give them the fault rests upon his own shoulders.

But there is no room to apply that well-established rule in in this case, for the defendant did ask other more definite and clearer instructions than those given.   He, in effect, asked the judge to point out specifically to the jury the allegation referred to by the words "the allegations in the indictment 'with the fraudulent intent'," but this request was refused.   It therefore becomes a question here whether a defendant, upon a charge of felony, can be compelled to rest his case on instructions referring only in a general way to the allegations in the indictment, or whether he has the right to have the questions in dispute specifically pointed out and presented to the jury.   I think that he has such a right, and that it is of the highest importance that questions of fact should be specifically stated to the jury, and not by the use of general terms left for them to speculate upon and pick out by the use of their own knowledge of the law and the facts.

I have not forgotten that the circuit judge gave another instruction on his own motion in which the facts were referred to.   In this instruction the judge tells the jury that if it is shown that defendant removed the property for honest purposes, intending soon to return it, they should acquit.   But this instruction leaves out the idea that the burden is on the state, and that the facts referred to must be established by the evidence beyond a reasonable doubt.   Without further explanation, this instruction might leave the impression that it was for the defendant to establish that his intentions in removing the property were honest.

Though the instructions given may, abstractly considered, be correct, still, for the reasons given, I think that neither of them clearly cover the points presented by the defendant in the instruction asked by him.   I am therefore of the opinion that

the refusal to give that instruction was error, for which the judgment should be reversed, and a new trial ordered.

HUGHES, J., also dissented, for reasons stated by him in an oral opinion.