## CARLTON *v*. STATE.

Opinion delivered October 20, 1913.

1. HOMICIDE—LESSER CRIME—SUFFICIENT EVIDENCE.—Under an indictment for murder, it is proper to submit to the jury the question of the defendant's guilt of any particular grade of offense included

in the indictment, if there is sufficient evidence in the cause which would just ify a conviction for that offense. (Page 523.)

2. HOMICIDE—LESSER CRIME—QUESTION FOR JURY.—Where defendant is indicted for murder, and there is evidence that would warrant the jury in finding defendant guilty of murder in the second degree, it is proper for the trial court to submit to the jury the question of defendant's guilt or innocence of the crime of murder in the second degree. (Kirby's Digest, § 1765.) (Page 523.)

3. INSTRUCTIONS—MODIFICATION.—It is not error to refuse to modify an instruction given by the court, where the court gave another instruction covering the requested modification. (Page 523.)

4. HOMICIDE—INSTRUCTIONS—READING STATUTE.—In a trial for homicide, the reading of the statute to the jury defining voluntary and involuntary manslaughter is proper, in the absence of a specific request from defendant for a correct instruction on the issue. (Page 523.)

5. CRIMINAL LAW—INDICTMENT AS EVIDENCE OF GUILT.—An indictment is not evidence of guilt, and is only the means of bringing a defendant into court. (Page 523.)

6. CRIMINAL LAW—PRESUMPTION OF INNOCENCE.—The presumption that a defendant in a criminal cause is innocent, clings to him throughout the trial, and until overcome by competent evidence sufficient to convince the jury of his guilt beyond a reasonable doubt. (Page 523.)

7. CRIMINAL LAW—WITNESS—EXAMINATION.—Where a witness at a trial gives different testimony from that given by him before the grand jury, the prosecuting attorney, being surprised by such testimony, may read or have the witness read his testimony taken before the grand jury, and may question him concerning the correctness thereof. (Page 524.)

8. CRIMINAL LAW—JURY—IMPROPER INFLUENCE.—Under Kirby's Digest, § 2390, it is within the discretion of the trial court to allow the jurors to separate or to keep them together, and when the court has not exercised its discretion to keep them together, although a juror separates himself from the rest of the jury during the trial, the burden is upon the defendant to show that the juror had been subjected to improper influences. (Page 524.)

Appeal from Newton Circuit Court; *George W. Reed,* Judge; affirmed.

STATEMENT BY THE COURT.

Carlton was a constable in Newton County, Arkansas. One night in December, 1912, there was a box supper at a schoolhouse for the purpose of raising funds to

purchase Christmas presents for the children. Some women requested Carlton to be present to keep the peace, as they had heard that a number of young men in the neighborhood had said they had ordered whiskey, and had also said they were going to "can" the box supper. Carlton was at the schoolhouse. He told the brother of the deceased and a companion that if any one drunk came into the house amongst the women and children, he would arrest them. Carlton then went into the school-house, and after he had gone, the deceased remarked, "B— G—, he could not arrest him."

Roscoe Barr, a brother of the deceased, entered the schoolhouse in a drunken condition, and approached the stove, around which the women and children were gathered. Carlton went to him and took him by the shoulder and led him or pushed him out of the room. The deceased followed Carlton and his brother out of the house. When deceased got outside, he shoved appellant loose from his brother with the statement, "No G— d— man could arrest his brother." Deceased put his hand either in his right hip pocket or into the opening of his bib overalls, with the remark, "You G— d— s— of a b——, you can't arrest me."

Carlton drew his revolver and commanded him to take his hands out of his pocket or to put up his hands. Deceased repeated the statement that he had made to Carlton, and made a motion as though to draw a weapon. The revolver that Carlton had was a borrowed one, with which he was not very well acquainted. The pistol was out of repair and would not stand cocked. Carlton had cocked the pistol with his right hand, but, believing that it had not caught, he took hold of the barrel with his left hand and cocked it again. This time he felt it catch, and, thinking it was safely cocked, he took his thumb off the hammer. The hammer immediately fell, firing the pistol, the ball of which passed through appellant's finger and struck the deceased in the temple, killing him instantly. Some one grabbed or jerked the appellant around, and the pistol was again discharged, the ball entering the

foundation of the school building back in the opposite direction from where appellant had been facing.

When the deceased was picked up and carried in the house, his knife was found lying upon the ground near his right hand. There was some dispute as to whether the knife was open or closed. Appellant stated immediately after the pistol was fired that it went off, but that he would have had to shoot the deceased anyway. The next day the appellant went to the county seat and voluntarily surrendered himself to the sheriff.

The above are substantially the facts as they were developed at the trial by the testimony for the appellant.

There was testimony on behalf of the State which tended to show that Carlton said to the deceased, "Hands up;" that Carlton drew his revolver and brought it up, holding it with both hands, when the same was fired. He said that he didn't aim to do it. Deceased's right hand, at the time, was on his brother's left shoulder, his left hand hanging down by his side; and not in his pocket. Witness didn't see him making any effort with his hands.

It was shown that Carlton said that he shot deceased accidentally. It was also shown that he stated that he shot him because he thought he had to do it to save his own life. He stated that he shot him because he didn't take his hands out of his pocket; that he thought he was going to draw something.

The appellant was tried for murder in the first degree, and the above is substantially the testimony upon which he was convicted of involuntary manslaughter and sentenced to two years' imprisonment in the State penitentiary.

Among other instructions, the court gave the following:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaugh-

ter, or that the accused was justified or excused in committing the homicide.''

The appellant objected to the giving of the instruction, and also requested the court to modify it by adding the words, ''however, if, in the whole case, you have a reasonable doubt of the defendant's guilt, you will acquit him,'' which the court refused.

The appellant objected to the court's reading the section of the digest pertaining to voluntary and involuntary manslaughter, and at the time specifically requested the court to give a correct charge to the jury as to the law of involuntary manslaughter, which request the court refused, further than the reading of the section of the statute, to which the appellant duly excepted.

The appellant requested the court to charge the jury as follows: ''I charge you that the indictment constitutes no evidence against the defendant; it is simply the means by which he is brought into court, and should not be considered by you even a circumstance against him. Upon the interposition of defendant's plea of not guilty to the charge, there arises the legal presumption that he is innocent, and this presumption is, within itself, sufficient to warrant an acquittal at your hands, unless overturned by the proof, and remains with the defendant as a complete defense until it is overcome by legal evidence that satisfies your minds beyond a reasonable doubt of his guilt.''

The court refused this prayer for instruction, to which appellant excepted. The court, of its own motion, gave the following:

8. ''The indictment is no evidence of the defendant's guilt. It is only the means of bringing the defendant into court, and when this is done, it has served its purpose.''

9. ''The defendant is presumed to be innocent, and this presumption clings to him through every material step of the trial until overcome by competent testimony sufficient to convince you beyond a reasonable doubt of the defendant's guilt.''

Appellant complains that it was error to permit the prosecuting attorney to ask one of the State's witnesses with reference to what he testified before the grand jury, and to read to him in the presence of the trial jury from a book purporting to be the minutes of the grand jury, and asking the witness if he did not testify as was therein written.

The record shows that during the examination of the witness Walter Waters because of a rain and hail storm, the trial was suspended temporarily, and during the time of such suspension, one of the jurors, towit, J. N. Davis, without the knowledge or consent of the defendant, left the court room, and was gone for some length of time, and was not present in the court room when the court was ready to resume the trial and the further examination of the witness, and did not come back into the court room until after a wait of some minutes. Whereupon the court adjourned until the next morning at 7 o'clock, and, the jury being held together, were placed in charge of J. M. Brisco, special deputy sheriff, who was specifically sworn, as required by law.

The appellant makes the above one of his assignments of error in the motion for a new trial.

*Troy Pace,* for appellant.

Under the evidence, the offense at most amounted only to manslaughter, and it was prejudicial error to give an instruction which submitted any other question to the jury. Instruction No. 4, section 1765, Kirby's Digest, is only applicable where the evidence shows murder in one of the degrees, and was prejudicial in this instance. 71 Ark. 459. The modification requested, as to reasonable doubt, should have been given. 76 Ark. 489; *Ib.* 110; *Ib.* 517.

It was error for the court to refuse to give, at the specific request of appellant, a correct charge as to what constituted involuntary manslaughter. 102 Ark. 180-6; *Ib.* 195-9; 100 Ark. 218; 74 Ark. 453.

It was error to allow a juror to separate from his fellows during the trial, without an order of court, and

is *prima facie* ground for a new trial, unless it affirmatively appears that the separating juror was not subject to any noxious influence.  12 Ark. 782; 33 Ark. 317; 20 Ark. 36; *Ib.* 53; 26 Ark. 323; 28 Ark. 155; 34 Ark. 341; 35 Ark. 118; 44 Ark. 115; 57 Ark. 1; 76 Ark. 487; 103. Ark. 4.

A witness may not be impeached by reading to him the minutes of the grand jury, without proof identifying the same.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The evidence warranted a conviction of second degree murder, and it was therefore not error to give as an instruction section 1765, Kirby's Digest.  Nor in refusing to add the modification requested as to reasonable doubt, as this was sufficiently covered in another instruction given by the court.  76 Ark. 515.

It was not error for the court to read the sections of the Digest covering the subject of involuntary manslaughter in the absence of a specific instruction requested by appellant on this point.  *Scoggin* v. *State,* 109 Ark. 510.

Where the testimony of the State's witness is different from that given before the grand jury, and State's counsel is thereby surprised, he is entitled to read to witness his testimony taken before the grand jury, and question him thereon.  92 Ark. 237.

It is within the discretion of the court to allow a juror to separate from his fellows, unattended, where they have not been ordered kept together, Kirby's Digest, section 2390; and in such case the burden is on the defendant to show that improper influences were brought to bear on him.  84 Ark. 567-572.

Wood, J., (after stating the facts).  1.  Appellant contends that the strongest force of the testimony on behalf of the State only tends to show that appellant was guilty of manslaughter, and that therefore the court erred in giving instruction No. 4.  (Kirby's Digest, §.1765.)

In *Allison* v. *State,* 74 Ark. 444, we said: "The

question of whether it is proper to submit to the jury the question of the defendant's guilt of any particular grade of offense included in the indictment must be answered by considering whether there is evidence which would justify a conviction for that offense.''

Under the testimony in this case on behalf of the State, the jury would have been warranted in finding the defendant guilty of at least murder in the second degree. The court therefore did not err in submitting to the jury the issue of appellant's guilt or innocence of the crime of murder in the second degree. One of the witnesses testified that appellant shot Barr while the latter had his right hand on the shoulder of his brother and his left hand hanging down by his side, the same not being in his pocket, and that Barr was making no effort with either hand. This testimony was sufficient, if believed by the jury, to have warranted the jury in returning a verdict of at least murder in the second degree, and therefore there was no error in the giving of instruction No. 4. See *Allison* v. *State, supra.* Moreover, the instruction, even if improper, was not prejudicial because the verdict of the jury was for the lowest grade of homicide included in the indictment.

The court gave an instruction on reasonable doubt which fully covered the modification asked by appellant, and it was therefore not error to refuse this modification. See *Petty* v. *State,* 76 Ark. 515-517.

2. The appellant requested the court to give a correct instruction on involuntary manslaughter, but did not present what he considered a correct instruction. He can not complain therefore that the court did not grant his request. The reading of the statute defining voluntary and involuntary manslaughter without a more specific request of appellant, setting forth his prayers for instruction, was sufficient. *Scoggin* v. *State,* 109 Ark. 510.

The court, in its instructions 8 and 9, fully covered the matter presented by appellant's prayer as to the

presumption of innocence, and there was therefore no error in refusing such prayer.

Where a witness at the trial gives different testimony from that testified by him before the grand jury, the prosecuting attorney, being surprised by such testimony, may read or have the witness read, his testimony taken before the grand jury, and may question him concerning the correctness thereof. *Derrick* v. *State,* 92 Ark. 237-239. See also, *Davidson* v. *State,* 108 Ark. 191.

3. The separation of the juror from his fellows while the trial was temporarily suspended during the thunder storm is not shown to have been prejudicial to the rights of the appellant. This separation took place before the court had exercised its discretion to keep the jurors together. At the time the juror separated himself from the other jurors, the court had not concluded to keep them together, and had not at that time placed them in charge of the bailiff with directions to keep them together with specific instructions not to allow them to separate. The record shows that at the time the juror separated himself from his fellows he was under no instructions of the court not to do so, and therefore violated no instructions of the court in so doing. No testimony was offered to show that the juror, while absent from his fellows, was guilty of any conduct prejudicial to appellant.

It is within the discretion of the court to allow the jurors to separate or to keep them together, (Kirby's Digest, § 2390), and as the court had not exercised its discretion to keep them together at the time the conduct of the juror here complained of occurred, the burden was upon the defendant to show that the juror was exposed to improper influences. See *Reeves* v. *State,* 84 Ark. 572.

The record is free from errors prejudicial to appellant, and the judgment must therefore be affirmed.