KENNEDY v. STATE.

Opinion delivered July 12, 1915.

1. LARCENY—LARCENY OF HOGS—SUFFICIENCY OF EVIDENCE.—In a prosecution for the larceny of certain hogs, the evidence held sufficient to support a verdict of guilty.

2. APPEAL AND ERROR—EXCEPTIONS—HOW PRESERVED.—Matters occurring under the eye of the trial judge, which form the basis of an exception, in order to be available on appeal, must be certified by the trial judge in the bill of exceptions; only incidents which occur outside the presence of the court may be brought to the attention of the court on appeal by other evidence.

3. TRIAL—SEPARATION OF JURY—PREJUDICE—BURDEN OF PROOF.—When the trial judge, during a trial, permits the jury to separate, the burden rests upon the complaining party to show that prejudice resulted therefrom.

4. TRIAL—SUSPENSION OF PROCEEDINGS—USE OF JURORS ON ANOTHER CASE—PREJUDICE.—Where the trial of a case is for any reason temporarily suspended, it is bad practice for the court to use the jurors, in the interval, in the trial of another case; but where the trial of a cause was suspended and resumed the following day, it will not be presumed that prejudice resulted to the complaining party from the fact that the trial court used some of the jurors in the trial of another case, and the burden is upon him to show wherein any prejudice resulted.

Appeal from Monroe Circuit Court; *T. C. Trimble,* Judge; affirmed.

Appellants, *pro se.*

1. Appellants review the evidence and contend that it is not sufficient to sustain a conviction even of Yates, the alleged owner of the hogs, and especially not sufficient to convict Kennedy and Helmering, who were hired to work for him, in that it does not establish a felonious intent nor establish ownership of the hogs in Scott.

2. When all the evidence had been introduced except the testimony of one witness on each side, it was prejudicial error on the part of the court to suspend the trial of this case for a day and a half while waiting for an absent witness on behalf of the State, and in the meantime to empanel four of the jurors composing the jury in this case to try another felony case, and three of the jurors to try a civil cause, and then, over the objection of appellants, to reassemble the same jury to conclude the trial of this case. 95 Ark. 428; 28 N. W. 430; 72 Ia. 759, 33 N. W. 655; 63 Fla. 61, 58 So. 131; 63 Ga. 31.

*Wm. L. Moose,* Attorney General, *Jno. P. Streepey,* Assistant, for appellee.

1. Where there is any substantial testimony upon which to base a verdict of guilt, this court will not disturb the finding of the jury. In this case the evidence is sufficient to sustain the conviction. 109 Ark. 130; *Id.* 138.

2. There was no prejudicial error in refusing to discharge the jury after the interruption of the trial on account of the absent witness. The record fails to disclose any specific objection made, or that the court was pressed to a ruling thereon.

A ground of motion for new trial which is not responsive to the ruling of the court complained of, as reflected by the bill of exceptions, will not be considered. 78 Ark. 40; 93 S. W. 55.

McCULLOCH, C. J. Appellants, John Kennedy, H. L. Yates and George Helmering, are charged with the crime of grand larceny in stealing three hogs, the property of an old colored man named William Scott. The hogs were running at large in White River bottom, and the testimony adduced by the State tends to establish the fact that appellants caught the hogs, put them in a pen and killed them, with the felonious intent to deprive the true owner of his property. Scott had fifteen hogs running in that range, all of them marked with a crop off the left ear and a split in the right ear.

A witness introduced by the State testified that he was lying in a boat, in the mouth of a bay that runs into the river, late one afternoon about sundown or dusk and saw appellants cleaning hogs on Yates' boat; the next morning he (witness) went over to the hog pen in the woods, about 150 yards from where he had seen appellants cleaning the hogs, and found the place where the hogs had been killed apparently the evening before, and saw blood and hair there. The same witness testified that he talked to Yates about the hogs and that the latter had told him that he had bought the hogs from one Morris; and that when witness said something about the law on that subject, Yates replied: "Hell, there is no law in Arkansas," adding that "there is a thousand dollars' worth of meat out there in the bottom, and I am going to have my meat out of them." That conversation, the witness stated, was about a week before he saw appellants cleaning the hogs.

Another witness testified that he saw six hogs in the pen referred to, near the river, marked crop off of the left ear and split in the right, and that shortly after the date the other witness, McDermott, had testified to seeing appellants cleaning the hogs on the boat, he went to the pen again and that some of the hogs were missing. He testified that they were large sized killing hogs.

William Scott, the colored man who lost the hogs, testified about the marks and the fact that the hogs were running in the bottom and were lost about the time that McDermott saw the appellants cleaning the hogs on the boat. He testified, also, about seeing some of the appellants in the bottoms hunting hogs.

(1) The evidence was sufficient to identify the hogs killed by appellants as the hogs of Scott which were missing about that time.

Appellants offered testimony tending to show that one Walter Morris had hogs running in the bottom, some of which were marked in the same mark as that of Scott's hogs, and that the hogs taken up were those that had belonged to Morris. They exhibited a bill of sale dated in

May preceding the time Scott's hogs were killed in No-vember, by which writing Walter Morris sold all of his claim to Yates for the sum of $25, and described the hogs as follows:

"White and black sow and pigs, no mark. Old sow has nine shoats about five months old; nineteen pigs now, old sow under slope and swallow fork each ear; eight shoats crop in left and split in right; three crop and under half-crop in each ear; two crop off right ear." It was a question for the jury, we think, to determine whether the hogs killed by appellants were those which belonged to Scott or whether they were hogs which Yates bought from Morris. In other words, it was a question of fact to determine whether Yates' claim of ownership was made in good faith or whether it was a subterfuge to avoid punishment. It can not be said that the proof was undisputed. Morris testified that he had hogs in that range and sold his claim to Yates, and it is true that the bill of sale describes hogs marked the same as Scott's mark, but the hogs described in the bill of sale by that mark are designated as shoats, whereas the proof shows that the hogs killed by appellants bearing that mark were large size killing hogs. The bill of sale described hogs in four different marks, and some without any marks, and this fact was worthy of consideration in testing the question of good faith. The jury also had a right to consider the reckless manner in which appellant Yates asserted his right to take hogs out of the woods, saying that whether there was any law or not he proposed to get his meat out of the hogs running in the range. The testimony was, we think, legally sufficient to sustain the verdict.

Appellants claim, as another ground for reversal, that the court improperly allowed members of the jury, during a temporary suspension of the trial, to serve on other juries in cases being tried. The record shows that the trial of this case was begun on April 29, and, not being concluded at the close of that day, an adjournment was taken over until the following day, and the order

on the next day, April 30, shows that the trial was re-
sumed and progressed to a verdict during that day. The
record entry does not recite any suspension of the trial
during the day. However, appellants filed with the mo-
tion for a new trial the affidavit of the clerk of the court,
who stated in the affidavit that during the afternoon of
April 30 the court suspended the trial of this case to
await the coming of another witness, and that during that
time two other cases were tried, one of them a felony
case and another a civil case, and that some of the jurors
in this case served as jurors in each of the other cases.
The affidavit recites further that the other two trials were
both concluded before the time came for resuming the
trial in this case, and that when the witness came the
trial of this case was resumed.

(2)     We are of the opinion, in the first place, that
grounds for the exceptions are not properly laid, in that
the facts set forth in the affidavit of the clerk are not
recited in the bill of exceptions.    Matters occurring un-
der the eye of the judge, which form the basis of an ex-
ception, should be certified by the judge in the bill of
exceptions.    It is only incidents which occur outside of
the presence of the court which must be brought to the
attention of the court by other evidence.    The judge
makes no mention in the bill of exceptions of any such
occurrence, nor was he asked to insert the recital of such
an occurrence in the bill of exceptions.    Notwithstanding
the affidavit of the clerk, we must assume that the judge
has certified in the bill of exceptions all of the incidents
of the trial which occurred in his presence.    If it was
thought that the judge had erroneously omitted the re-
cital, the exception could have been preserved by the
affidavits of bystanders.

(3)     In the next place, we think that even if the
exception had been properly preserved, there is not
enough to show that anything occurred which might have
operated to the prejudice of the appellants.    There is
nothing in the record to show that there was any objec-
tion on the part of the appellants to allowing the jury to

separate, and when a separation of the jury is allowed by a trial judge the burden rests upon the complaining party to show that prejudice resulted. All that is shown here, even if we give full effect to the affidavit of the clerk, is that some of the jurors during the temporary suspension of this trial served as jurors in other cases which were then tried. There is nothing in that of itself which could result in any prejudice, and if there was anything which occurred during the trial of the other cases which might have operated to the prejudice of these appellants, it was their duty to show it before they could ask that the verdict be set aside on that account.

(4) Appellants cite cases on their brief where courts decide that it is bad practice to interrupt a trial by a temporary suspension and trial of other causes during the intervening time. Indeed, some of the cases they cite hold that this constitutes prejudicial error for the reason that jurors are unable to carry the facts of different cases in their minds at the same time so as to be able to weigh the facts of each case with precision and care. The cases cited also cover much longer periods of time, some of them several days, in which many cases were tried during the intervening time. Now, we agree that it is bad practice for a court to take jurors from one case and use them as trial jurors in other cases. Litigants are entitled ordinarily to an uninterrupted trial so that everything may be bent to the solution of the question involved in that particular case before the minds of the jurors are vexed with other questions. But we can not agree to the view that indulgence in practice of this kind necessarily results in prejudicial error. These two trials occurred, according to the evidence of the clerk, taken in connection with the record entries, during the afternoon of April 30, and were concluded during the same afternoon, and the trial of this case was resumed and concluded the same day. The time was too short for the facts of this case to have become obscure in the minds of the jurors, and we do not think that any prejudicial effect is shown. So there is nothing in this

assignment of error, even if we treat it as having been properly brought into the record.

The judgment is therefore affirmed.