## WALLACE *v.* STATE.

Opinion delivered December 9, 1929.

*Elmo CarlLee,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

MEHAFFY, J. The indictment in this case charged the appellant with grand larceny, alleged to have been committed on the 15th day of December, 1928, by unlawfully and feloniously stealing, taking and carrying away 171 pounds of seed cotton, of the value of $15, and two cotton-pick sacks of the value of $1.50, the property of Roger Williams.

Appellant was convicted and sentenced to one year in the penitentiary, and he prosecutes this appeal to reverse said judgment. Appellant, in his motion for a new trial, urges a reversal of the case because one of the jurors left the other eleven of his fellow-jurors, and ap-

peared before the court and asked the court if he would suspend the sentence during good behavior, if they found him guilty and fixed his punishment at one year in prison.

In support of his motion for new trial, appellant filed the affidavit of W. R. Mayer, one of the jurors, who testified, in substance, that, after they had deliberated quite a while, and the jury were divided, they agreed to send one juror, Sanford Davis, to the court to ascertain if he would suspend the sentence on good behavior if the jury would return the verdict of guilty, and fix his punishment at one year, and recommend that the sentence be suspended during good behavior; that said juror went to the court, and was gone ten or fifteen minutes, and came back and said it was all right.

This juror testified that he would not have consented or returned a verdict if he had not been assured that Wallace would not be sentenced, but that his sentence would be suspended. He also testified that he felt that the evidence did not warrant conviction at all, but thought this sort of a verdict and suspended sentence would be better for the defendant than to keep him and subject him to the third trial, with its expense and worry.

Also, in support of his motion for a new trial, appellant filed the affidavit of W. J. Dungan, an attorney, who stated that, after the case was submitted to the jury, one of the jurors, Sanford Davis, came from the jury room and approached the court and said, substantially: "Judge, we can agree on a verdict of guilty and punishment at one year if you will agree to suspend the sentence during good behavior."

It is earnestly insisted by the appellant that this conduct of the juror was improper, and that because of this misconduct he should have a new trial.

The statement of the court is that the juror came to him and made the statement, in substance, as detailed by the attorney, and that the court directed the juror to return to the other eleven without instructing him. In other words, when he came and made the statement to

the court, the court immediately directed him to go back to the jury-room where the other eleven were, and did not give him any instructions or any intimations at all.

It is argued that the juror had to go from one floor to another and pass bystanders, but there is not even a suggestion that he spoke to anybody or that anybody spoke to him, either while he was going to the courtroom or going back to the jury-room.

In trials of felony cases at common law it was necessary to keep the jury together in charge of an officer, and not to permit them to separate from the time of their being impaneled and sworn, but in this State the matter is regulated by statute.

Section 3187 of C. & M. Digest reads as follows: "The jurors before the case is submitted to them, may, in the discretion of the court, be permitted to separate, or be kept together in the charge of proper officers," etc.

Section 3190 of Crawford & Moses' Digest provides: "After the cause is submitted to the jury they must be kept together in the charge of the sheriff, in the room provided for them, except during their meals and periods for sleep, unless they be permitted to separate by order of the court," etc.

The statute also provides that certain instructions shall be given to the jury, and this court has repeatedly held that it was within the discretion of the court to keep them together or permit them to separate.

The record is silent in the instant case as to whether the court had made any order at all, and there is no contention that the court had made an order to keep them together. Some courts have held that where, under a statute like ours, the court may keep them together or permit them to separate, if he once makes an order to keep them together, it is error to thereafter permit them to separate. However, that question is not involved in this case. There is no contention that any order to keep them together was ever made by the court. There is no contention that the juror that separated talked to any-

body or that anybody talked to him during his absence from the other eleven.

Where the court permits the jurors to separate, or where there has been no order keeping them together, the burden rests upon the complaining party to show that prejudice resulted. There is no evidence in the record tending to show that anything was done by the juror or anyone else while he was absent from his fellow-jurors that resulted in any prejudice to the appellant. *Kennedy* v. *State,* 119 Ark. 611, 178 S. W. 920; *Carlton* v. *State,* 109 Ark. 516, 161 S. W. 145; *Reeves* v. *State,* 84 Ark. 570, 106 S. W. 945; *Beason* v. *State,* 166 Ark. 142, 265 S. W. 956.

The affidavit of the juror, however, is to the effect that when Davis came back to the jury-room he reported that he had been to the judge, and it was all right, and for that reason he voted for a conviction, and agreed to a punishment by imprisonment for one year. He testifies that but for that he would not have agreed to convict at all.

Section 3220 of C. & M. Digest is as follows: "A juror cannot be examined to establish a ground for a new trial, except it be to establish, as a ground for a new trial, that the verdict was made by lot."

In discussing the question of the admissibility of the testimony of a juror, this court said: "But this evidence was not competent for that purpose, and would be insufficient to support a finding that members of the jury had read these articles, because jurors are not thus allowed to impeach their verdict." *Capps* v. *State,* 109 Ark. 193, 159 S. W. 193, 46 L. R. A. (N. S.) 741, Ann. Cas. 1915C, 957. See also *Wilder* v. *State,* 29 Ark. 293; *Smith* v. *State,* 59 Ark. 132, 26 S. W. 712, 43 Am. St. Rep. 20; *Hampton* v. *State,* 67 Ark. 266, 54 S. W. 746.

Since there was no order of the court shown requiring the jury to be kept together, the burden is upon the appellant to show that something was done to his prejudice because of the separation of the jury, and this can-

not be shown by the affidavit of one of the jurors, because he is prohibited by statute from giving testimony to impeach the verdict of the jury, except to show that it was arrived at by lot.

Appellant discusses several cases, but none of them announce the doctrine contrary to what we have here said. It is also contended by the appellant that the verdict is indefinite, and that it does not show what the defendant was found guilty of. The verdict is as follows:

"We, the jury, find the defendant guilty, and fix his punishment at one year, and recommend to the court to suspend the sentence on good behavior."

It is true that the verdict must, either in itself or by reference to the indictment or information, contain a finding of every essential element of the crime of which the appellant is convicted. But a verdict of guilty implies a finding of every element essential to constitute the crime as charged, and it need not state the specific crime, it being sufficient that it finds the defendant guilty as charged in the indictment or information, or that from its language as a whole no doubt can arise as to the offense of which the accused is convicted.

"As a general rule, where an indictment charges separate and distinct crimes of different degree, a general verdict of guilty, without mentioning the degree, will be held to apply to the crime of highest degree, and, if defendant is guilty of a higher degree, the jury need not pass upon the lower ground." 16 C. J. 1109.

"The prevailing rule, and the one that is adhered to by this court, is stated by Mr. Bishop as follows: A general finding of guilty will be interpreted as guilty of all that the indictment well alleges. It is sometimes said that such finding, where different grades of an offense are charged, means guilty of the highest grade; but this is only another form of saying that it means guilty of all, because a higher grade includes the lower." *Porter v. State*, 57 Ark. 267, 21 S. W. 467.

It is only in cases of murder that the statute makes it necessary for the jury to state in their verdict the degree of the crime.

Section 3205, C. & M. Digest, reads as follows: "The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but, if the accused confess his guilt, the court shall impanel a jury and examine testimony, and the degree of the crime shall be found by such jury."

But there is no such requirement in indictments for other felonies.

In *Porter* v. *State, supra,* this court said: "In this indictment only murder in the second degree is charged. When therefore the jury return a verdict of guilty as charged, it is manifest, under the rule above stated, that they intend to return a verdict for that degree of murder. The object of the statute was to make sure that the accused should not be subjected to capital punishment unless the jury specially find that he is guilty of the first degree of murder. *Simpson* v. *State,* 56 Ark. 8, 19 S. W. 99. The statute does not apply to degrees of homicide less than murder. *Fagg* v. *State,* 50 Ark. 506, 8 S. W. 829. No inquiry can arise as to whether one has been convicted of murder in the first degree when he is indicted only for murder in the second degree. We conclude therefore that it is only on the trial of an indictment for murder in the first degree that the verdict must specify the degree of which the accused is convicted."

The verdict in the instant case is sufficient to authorize a judgment and sentence for grand larceny. We find no reversible error, and the judgment of the circuit court is affirmed.