## SMITH v. STATE.

### Opinion delivered May 12, 1894.

1. *Criminal law—Disqualification of juror.*

Defendant is not entitled to a new trial, on the ground that one of the jurors had formed and expressed an opinion of his guilt before the trial, if he accepted such juror without examination.

2. *Homicide—When justifiable.*

To justify a killing in self-defense, it is not essential that it should appear to the jury to have been necessary; it is sufficient if defendant honestly believed, without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary to save his own life, or prevent great bodily injury. .

3. *Homicide—Preventing escape of a misdemeanant.*

In making an arrest for a misdemeanor, or in preventing an escape after the arrest, a peace officer, or a person called upon to assist him, is not bound to retreat when resisted, but may use such physical force as is apparently necessary, on the one hand, to effect the arrest by overcoming the resistance he encounters, or, on the other, to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused, or even inflict upon him great bodily harm, except to save his own life or to prevent like harm to himself.

4. *New trial—Affidavits of jurors.*

Affidavits of jurors are not admissible to show that the jury received evidence after they had retired to consider their verdict, under Mansf. Dig. sec. 2298, providing that a juror cannot

be examined to establish any ground for a new trial, except that the verdict was made by lot.

Appeal from Benton Circuit Court.

EDWARD S. MCDANIEL, Judge.

No counsel for appellant.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. The affidavits of jurors, under our statute, are not admissible to impeach their verdict. Thompson on Trials, secs. 117, 2557.

2. The record fails to show that the accused employed the means provided by law for ascertaining whether the juror has formed an opinion or not. 40 Ark. 515.

3. Instructions as to the higher grades of homicide did not prejudice appellant, as he was found guilty of the lower degree. 54 Ark. 4.

4. The evidence sustains the verdict.

BATTLE, J. Bud Smith was indicted for voluntary manslaughter, committed by killing John Boyd at Sulphur Springs, in Benton county, in October, 1892. "The evidence adduced at his trial tended to show that the deceased was drinking, and that as he came out of a saloon he gave a 'whoop.' Sharp, the town marshal, and Poindexter, his deputy, came to where he was, and asked who did the hallooing. The deceased replied that it was he, and they arrested him, and a scuffle ensued, in which the deceased succeeded 'in getting loose.'" When he had freed himself from the hands of the officers, he immediately attacked the marshal, and knocked him down ; and a friend, coming to his assistance, felled the deputy. As soon as the marshal recovered from his fall, he fled toward and around a crowd which was looking on, the deceased following. The defendant was then standing on the outskirts of the crowd

whittling with a knife. Sharp, the marshal, in his flight, approached him and said, "I deputize you to help me arrest Boyd." The defendant made no reply, but moved a step or two toward the marshal, and stopped. The deceased ran up to them with a club or gas pipe, about 20 or 24 inches long, in his hand, and asked the defendant what he had to do with it, and, without waiting for a reply, struck him on the head with the club or gas pipe, and knocked him down, and, as he partially recovered, and before he was erect, struck at him again, and the defendant threw up one hand to ward off the the blow, and as he did so stabbed the deceased with a pocket-knife in the other. Only one wound was inflicted, and from that the deceased died on the third day. Evidence was also adduced tending to prove that the defendant had never seen the deceased before his arrest by the marshal, and that the deceased threatened to kill him when he was attacking him.

The court instructed the jury, over the objections of the defendant, as to what constitutes murder in the first and second degrees, and defined express and implied malice; and, among others, gave the following instructions to the jury, over the objections of the defendant:

"In order to justify the killing on the grounds of self-defense, it must appear from the evidence that the circumstances surrounding the defendant at the time were sufficient to excite the fears of a reasonable person, and that the defendant really acted under the influence of such fears, and not in a spirit of revenge. It must appear that the danger was not only impending, but was so urgent and pressing that, in order to save his own life or to prevent his receiving great bodily injury, the killing of John Boyd was necessary. It must also appear from the evidence, in order to justify the killing, that the defendant had employed all reasonable means within his

power, and consistent with his safety, to avert the necessity of taking life."

It also gave the following instruction: "The jury are instructed that if the deceased, Boyd, wilfully or maliciously disturbed the peace and quiet of the town or village or neighborhood of Sulphur Springs by loud or unusual noises, or by abusive, violent, obscene or profane language, and such disturbance was committed in the presence of a peace officer, then such peace officer would have authority to arrest him, and summon others to assist him in making such arrest. In making an arrest for the disturbance of the peace, or other misdemeanor, or in attempting to prevent the escape of the person arrested, the officer or person acting under him can exert such physical force as is necessary, on the one hand, to effect the arrest by overcoming the resistance he encounters, or, on the other hand, to subdue the efforts of the prisoner to escape ; but he cannot in either case take the life of the accused, or even inflict upon him great bodily harm, except to save his own life, or to prevent great bodily harm to himself."

The defendant asked, and the court refused, to instruct the jury that a peace officer, or person summoned to assist him, in making an arrest of a criminal for a disturbance of the peace, or other misdemeanor, or in attempting to prevent the escape of the person arrested, is not required to retreat from resistance made to efforts to compel submission to arrest, but may use such force as is apparently necessary to compel such submission, and may, if, in an effort to do so, he is assaulted by the criminal under such circumstances as lead him to believe he is in danger of losing his life or receiving a great bodily injury, repel force with force to the extent of taking the life of the criminal.

Upon the submission of the cause to them, the jury found the defendant guilty of voluntary manslaughter,

and assessed his punishment at two years imprisonment in the penitentiary. He filed a motion for a new trial, and stated, as the grounds of the same, among other things, that one of the jurors had formed and expressed an opinion as to his guilt or innocence of the crime whereof he was accused, before he was selected to try him; that the court erred in giving instructions to the jury over his objections, and in refusing to give others asked for by him; and that the jury received evidence after they retired to consider of their verdict. To sustain the last ground, the affidavit of one of the jurors was read, to the effect that, after the jury had retired, and had taken a ballot finding the defendant guilty, Ragsdale, a juror, detailed certain circumstances of the killing as of his own knowledge. The State read the affidavits of the twelve jurors, saying that they had found the defendant guilty of voluntary manslaughter before Ragsdale said anything about what he knew of the facts in the case, and, in arriving at the verdict, were governed solely by the evidence adduced at the trial and the instructions of the court.

The motion was overruled, and the defendant appealed to this court.

**1. No new trial for disqualification of juror, when.** When a juror or talesman is placed on the stand to be accepted on a jury in a criminal case, or challenged, either party may ask him whether he has formed or expressed an opinion as to the guilt or innocence of the accused. If both fail to do so, the defendant is not entitled to a new trial on the ground that the juror had formed and expressed such an opinion before he was selected. Having failed to avail himself of the means provided by law for obtaining an impartial jury, he has no right to complain of the results of his own negligence. *Casat* v. *State*, 40 Ark. 515.

We find nothing in the record in this case, outside of the motion for a new trial, which shows that any

juror was asked whether he had any opinion about the guilt or innocence of the defendant; and that there is no error in the refusal of the court to grant a new trial because a juror had formed or expressed an opinion before he was selected to serve on the jury.

The instructions as to what constitutes murder in the first and second degrees, and express and implied malice, should not have been given, but, as the defendant was only accused and convicted of voluntary manslaughter, they were not prejudicial.

The instruction of the court upon the right of self-defense is not correct. It is true that, "in ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary.". But to whom must it appear that the danger was urgent and pressing? According to reason and the weight of authority, it must so appear to the defendant. To be justified, however, in acting upon the facts as they appear to him, he must honestly believe, without fault or carelessness on his part, that the danger is so urgent and pressing that it is necessary to kill his assailant in order to save his own life, or to prevent his receiving a great bodily injury. He must act with due circumspection. If there was no danger, and his belief of the existence thereof be imputable to negligence, he is not excused, however honest the belief may be. The law, says Judge Campbell, of Michigan, "does not hold men responsible for a knowledge of facts, unless their ignorance arises from fault or negligence." 1 Bishop's New Crim. Law, secs. 304, 305; 1 Wharton's Cr. Law (9th ed.), secs. 487a–493; Kerr on Law of Homicide, sec. 169.

Professor Wharton, in his work on Criminal Law, explains what we have said as follows:

2. When homicide justifiable.

"A is assaulted by B, with what appears to be a loaded pistol in his hand. A kills B, believing the pistol to be loaded, when it is not. This, it is agreed, may constitute a good case of self-defense. When we come to analyze A's belief, however, we find that it is an ordinary conclusion of inductive reasoning; a conclusion which is erroneous, because its minor premise is false. Putting this process in syllogistic form, it stands as follows:

"Whoever assaults me with a loaded pistol endangers my life.

"B assaults me with a loaded pistol, etc.

"Supposing, however, we substitute for the subject of the major premise the term 'garroter'—slightly varying the predicate, the process may be then thus stated:

"A garroter taking me by the throat is likely to do me great bodily harm.

"B is a garroter taking me by the throat, etc.

"Now, in the first case, it is enough if I honestly, though erroneously, believe that B's pistol is loaded; and, in the second case, it is enough if I honestly, though erroneously, believe that B is a garroter. In both cases the error of the conclusions is one of the apprehensive powers. I err in my apprehension; I do not see aright; or I have been misinformed; or I have not heard aright. But in each case the error for which I am to be put on trial is my error, not somebody else's error. It is no excuse to me, if I resort to self-defense, that some 'reasonable' looker-on believes the pistol to be loaded, when I know that it is unloaded. So it is no excuse to me, if I shoot down a person suddenly hustling me, that some reasonable looker-on believes the supposed assailant to be a garroter, when I know him not to be a garroter. So if I, according to my own lights, conclude the pistol to be loaded, or the assailant to be a garroter,

then I am to be acquitted of malice if I act upon this belief, though I cannot be acquitted of manslaughter if I arrive at this belief negligently. In other words, I cannot be convicted of murder, which involves a malicious intent, unless I have malicious intent; though I may be convicted of manslaughter if I have killed another by aiming at him a dangerous weapon without due consideration."

In the instruction given upon this subject, in this case, the court virtually told the jury that the defendant could not be justified on the ground of self-defense, *unless it appeared to them* from the evidence "that the danger was not only impending, but was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of John Boyd was necessary," and that he "had employed all reasonable means within his power and consistent with his safety to avert the necessity of taking life." This was error.

As to the other instructions, given or refused as before stated, it is sufficient to say: A peace officer may arrest any one committing a misdemeanor in his presence, without a warrant, and, if necessary, orally summon as many persons as he deems necessary to aid him in making the arrest. In making the arrest, or in preventing an escape after the arrest, the officer or person assisting him in obedience to a summons, when resisted by the offender, is not bound to retreat, but may use such physical force as is apparently "necessary, on the one hand, to effect the arrest by overcoming the resistance he encounters, or, on the other, to subdue the efforts of the prisoner to escape; but he cannot in either case take the life of the accused, or even inflict upon him a great bodily harm, except to save his own life or to prevent a like harm to himself." *Thomas* v *Kinkead*, 55 Ark. 502.

3. Homicide in preventing escape of misdemeanant.

**4. Admissibility of affidavits of jurors.** Affidavits of jurors are not admissible to show that the jury received evidence after they had retired to consider their verdict. Under the statutes of this State a juror cannot be examined to establish any ground for a new trial, except that the verdict was made by lot. Mansfield's Digest, sec. 2298; *Wilder* v. *State,* 29 Ark. 293.

For the error indicated the judgment of the circuit court is reversed, and the cause is remanded for a new trial.