FRANKLIN *v.* STATE.

Opinion delivered May 8, 1922.

1. HOMICIDE—INDICTMENT.—Where a murder resulted from several acts consistent with each other, all the acts may be charged in the conjunctive and embraced in one count.

2. HOMICIDE—ELECTION BETWEEN METHODS OF KILLING RELIED ON.— Where an indictment for murder charged a killing by shooting and striking deceased, and the evidence tended to show that either wound would have been fatal, it was not error to refuse to require the State to elect whether it would prosecute for murder in shooting or in striking the deceased.

3. CONTINUANCE—ABSENCE OF MATERIAL WITNESS.—It was not error to refuse a continuance for the absence of a material witness where the witness was out of the State and not amenable to its process, and no showing was made that he would return to the State within a reasonable time, and no effort made to procure his deposition.

4. CRIMINAL LAW—INSTRUCTION AS TO REACHING VERDICT.—Where a jury had deliberated for several days, an instruction admonishing the jury as to the importance of deciding the case, and directing them to go back into the jury room and consider their verdict further was not erroneous.

5. CRIMINAL LAW—DEMONSTRATIVE EVIDENCE.—Where defendant in a murder case called for deceased's hat and introduced it in evidence, he was not entitled to object to its introduction because it had been in possession of deceased's family and had been tampered with after the killing by being torn in several places.

6. CRIMINAL LAW—DEMONSTRATIVE EVIDENCE.—Where the bullet which killed deceased was extracted in a *post mortem* examination and sealed and delivered to the circuit clerk, the identification of such bullet was sufficient to justify its introduction.

7. CRIMINAL LAW—NECESSITY OF MOTION FOR NEW TRIAL.—Assignments of error not appearing on the face of the record will not be considered unless the alleged errors are preserved in the motion for new trial.

8. HOMICIDE—EVIDENCE.—Evidence held to justify a finding of involuntary manslaughter.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*G. P. George, Frank Strangways* and *U. J. Cone,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

HUMPHREYS, J. Appellant was indicted for the crime of murder in the first degree in the Ashley Circuit Court at the October term, 1921, for killing Thomas N. Mann in said county on or about the 25th day of December, 1918. At the January, 1922, term of said court appellant was tried upon the indictment and convicted of involuntary manslaughter, his punishment being fixed at imprisonment in the State Penitentiary for a period of one year. From the judgment of conviction an appeal has been duly prosecuted to this court.

Omitting formal parts, the indictment is as follows: "The said R.E.L.Franklin, in the county and State aforesaid, on or about the 25th day of December, 1918, did unlawfully, wilfully, feloniously and of his malice aforethought, and after deliberation and premeditation, kill and murder one Thomas N. Mann, then and there being, by striking him, the said Thomas N. Mann, on the head with a certain blunt instrument, a more particular de-

scription of which is to the grand jury unknown, the said blunt instrument being then and there had and held in the hands of him, the said R. E. L. Franklin, and by shooting him, the said Thomas N. Mann, with a certain gun which the said R. E. L. Frankin then and there had and held in his hands, the said gun being then and there loaded with gunpowder and leaden bullets, contrary to the statutes in such cases made and provided,'' etc.

Appellant contends for a reversal of the judgment upon the ground embraced in his demurrer, filed below, to the effect that the crime of murder in the first degree was not sufficiently charged in the indictment. Under our law murder is a single crime and must be so charged, but if committed in different modes or by different means it is permissible to allege the different modes or means in the alternative. Crawford & Moses' Digest, § 3015. This statute, in so far as it relates to the method of killing, has reference to modes or means inconsistent with each other. For example, it means that the modes and means by which a single murder was committed may be charged in the alternative in the same indictment. In other words, the same murder may be charged in the same indictment either by poisoning or by force in the alternative, the means or modes being inconsistent. There is nothing in the statute indicating that this could not be done in one count, nor is there anything in the statute indicating that if the modes or methods by which the murder was accomplished were consistent they could not be alleged in the conjunctive. The trend of appellant's argument is that, because the modes or methods appear to have been charged in the indictment in the conjunctive, two offenses are charged. The indictment only charges one offense, committed in two different modes, one by striking, the other by shooting. It is true the methods are charged in the conjunctive, but there is nothing in our statutes prohibiting them being charged in the conjunctive if consistent. In other words, if the murder resulted from several acts consistent with each other, all the acts might be charged in the conjunctive and embraced in one

count. Mr. Bishop, in his work on New Criminal Procedure, vol. 1, sec. 434, enunciates the doctrine in the following language: "Some single offenses are of a nature to be committed by many means, or in one or another of several varying ways. Thereupon a count is not double which charges as many means as the pleader chooses, if not repugnant; and, at the trial, it will be established by proof of its commission by any one of them." The same rule of procedure is announced in Joyce on Indictments, § 401, and in the Standard Enc. of Procedure, vol. 12, p. 516. The trial court did not err in overruling the demurrer to the indictment.

Appellant's next insistence for reversal is that the court erred in overruling his motion to require the State to elect which mode or method of killing it would rely upon for a conviction. The proof on the part of the State tended to show that the murder was committed both by shooting and striking the deceased. When found, the top of deceased's head was crushed in as if a blow from a bludgeon, and there was a gunshot wound from a bullet which entered above and back of his right ear and lodged in the skull on the opposite side of the head. The evidence also showed that either wound would have produced instantaneous death. The authorities cited above are to the effect that proof of any one of the alleged methods of committing an offense, when not repugnant, is sufficient to sustain the charge. Directly upon this point, Mr. Wharton, in his work on Homicide, at page 563, uses the following language: "Where the means by which the murder was committed are uncertain, its commission by different means may be charged in a count of the information, and proof of any one will sustain the allegation, but the means so charged in the same count must not be repugnant. And an allegation of killing by shooting, and by cutting, bruising, and striking, charges that the accused inflicted two mortal wounds upon the deceased, one by shooting, and one by striking, and is not bad for repugnancy." The court did not err in overruling appellant's motion to

require the State to elect whether it would prosecute appellant for the murder in shooting or whether by striking the deceased.

Appellant's next insistence for reversal is that the court erred in overruling his motion for a continuance on account of the absence of Henry Ray Croswell, who, if present, would testify that he appeared on the scene of the tragedy soon after the killing and saw the sheriff, Dr. W. M. Chavis, extract the shells from deceased's pistol, which was picked up near the body; that one of the shells was empty and thrown on the ground by the sheriff; that witness picked up and saved the empty shell, and may have it yet; that the shell was a .32 Winchester. The sheriff had testified that the gun belonging to the deceased would fire a .32 caliber Winchester, although a .38 caliber Smith & Wesson pistol; and another witness had testified that the deceased usually carried a pistol loaded partly with .32 caliber Winchester cartridges. Appellant's theory was that the deceased, in a drunken frenzy, while playing with his own gun, accidentally killed himself, and that the crashing of the bullet through the head fractured the skull on top. Based upon this theory, there could be no question but what the evidence of the absent witness would have been material, as tending to support the theory of an accidental killing. It appears from the record, however, that the cause was continued from the August, 1921, term of the court until the following January term thereof; that at the time of the continuance it was known that the witness was in the military service in the Canal Zone, and that, in the interim, no effort was made to procure the deposition of the witness, and no effort to obtain the presence of the witness except to mail a subpoena for him to the Adjutant General of the United States army at Washington, D. C. Appellant failed to show that he used diligence to obtain the testimony or presence of the witness. The witness was out of the jurisdiction of the court and not amenable to its processes, and no showing was made that he would return

to the State within a reasonable time. The court did not abuse its discretion in refusing to continue the case for the attendance of the witness. *Puckett* v. *State,* 71 Ark. 62; *Turner* v. *State,* 135 Ark. 381; *Metropolitan Cas. Ins. Co.* v. *Chambers,* 136 Ark. 84.

Appellant's next insistence for reversal is that the court erred in admonishing the jury, after several days' deliberation, concerning the importance of coming to an agreement. The admonition complained of is as follows: "I would not ask any man on this jury to violate his conscience, and yet it has been my observation and experience that, although men partly disagree and don't agree for a time, some taking one question one way and others taking it the other, yet, after taking into consideration all the circumstances, they are finally able to agree. I don't have to tell you that you are men of common-sense, and I don't have to tell you that this is a case that has consumed a great lot of time and energy. You saw the great number of witnesses that were brought here, and you heard the testimony of those witnesses, and you know the importance of deciding this case, that this case be decided. It would be a bad thing if a verdict were not reached now; some jury will have to try this cause and settle it. There is no way that I know of, and there is no other way known to law, by which it can be decided. Considering all those things, gentlemen, I will have to ask you to go back into your jury room and consider of your verdict further."

We find nothing in the admonition indicating the court's opinion upon any disputed fact in the case, or upon the guilt or innocence of appellant, nor anything indicating that jurors should yield their honest convictions in order to reach a verdict. The admonition did not transcend the license accorded trial judges in *Johnson* v. *State,* 60 Ark. 45; *St. L. I. M. & S. R. Co.* v. *Carter,* 111 Ark. 272; *Reed* v. *Rogers,* 134 Ark. 528.

Appellant's next insistence for reversal is that the court erred in permitting the hat of deceased and the bullets found in deceased's pistol and in his head to be

introduced in evidence. The objection made to the introduction of the hat was that it had remained in possession of the family of the deceased and had been tampered with after the killing. Appellant himself called for the hat, and it was introduced at his instance. After being introduced, it was discovered that it not only had a bullet hole in it, but was torn in several places. After having introduced the hat, appellant was in no position to have it excluded. It was his privilege to prove that it had been torn after the death of deceased and while in the possession of the family of the deceased, if he chose to do so, but not his privilege to have it excluded over the objection of the State after requesting and obtaining its introduction himself. The objection made to the introduction of the bullets is that they were not properly identified. There was a *post mortem* examination of the deceased, and the bullet, which entered his head on the right side and lodged in the left side, was extracted. This bullet, as well as some Smith & Wesson .38 caliber bullets, were weighed by Dr. George, and the weights taken down, which weights, together with the bullets, were sealed in an envelope and placed in charge of the circuit clerk, where they remained until introduced and identified by Dr. George. We think the identification of the bullets sufficiently definite to justify their introduction.

The next insistence of appellant is that the court erred in giving and refusing certain instructions to the jury. None of the objections and exceptions to the instructions were preserved in appellant's motion for a new trial, except to appellee's requested instruction No. 1, which was a correct definition of murder. It was as follows: "Murder is the unlawful killing of a human being in the peace of the State with malice aforethought, either expressed or implied." Under the repeated rulings of this court, assignments of error not appearing on the face of the record will not be considered unless the alleged errors are preserved in the motion for a new trial. *Thielman* v. *Reinsch.* 103 Ark. 307; *Thomas* v. *Jackson.*

105 Ark. 353; *Railway Ice Co.* v. *Howell,* 117 Ark. 198; *Sublett* v. *Sublett,* 133 Ark. 196. Under the record presented we are not called upon to determine whether the court erred in giving or refusing instructions.

Appellant's last insistence for reversal is that the evidence is insufficient to support the verdict of the jury and judgment of the court. Deceased was killed in the afternoon of December 25, 1918, on the front walk between appellant's house and gate. The testimony introduced on the part of the State tended to show that deceased had been invited to take dinner with appellant, who stated that he had plenty of eggnog, but that he took dinner with his sister, Mrs. J. Q. Pilgrim, and remained there until about 3 o'clock, when he started home in the direction of Hamburg. In going toward Hamburg he had to pass appellant's house. The sheriff was called between 4 and 5 o'clock by appellant's wife, who requested him to ask the deceased's father to come and get him, as he was in a bad fix. In a short time thereafter the sheriff was notified to come himself, and when he arrived he found the dead body of the deceased on the walk with a bullet hole in his head; his pistol was near his side, and his hat on the ground near by. His pistol was a .38 caliber Smith & Wesson, and one chamber had been fired. Appellant's statement concerning the killing to different parties was somewhat conflicting. After the burial of deceased, suspicion was aroused against appellant, and the body was disinterred and a *post mortem* examination made. It was discovered that a bullet had entered on the right side of the head a little above and back of the right ear and lodged on the opposite side in front of the left ear. The bullet was about the same weight of a .32 caliber Winchester bullet. It was also discovered that the top part of his head, towards the back, had been fractured as if done with a blunt instrument. Appellant owned a .32 caliber Winchester rifle. Deceased's coat sleeve was torn, and when his hat was introduced in evidence there were several torn places in it. Later the grand jury investigated the killing and returned an indict-

ment against appellant. At the time the grand jury was conducting the investigation appellant was serving on the petit jury. When a warrant was issued upon the indictment, appellant could not be found, having disappeared. He went to Greenwood, S. C., where he lived until he was found and arrested, under the name of Robert E. Lee. The State's theory, based upon the facts just detailed, was that appellant killed the deceased in a drunken brawl by first shooting him with a .32 caliber Winchester rifle and then striking him in the top of the head with some blunt instrument. Appellant's theory was that the deceased shot himself with his own pistol while playing with it, and that the shattering of the skull in the top of the head was done by the bullet as it ranged upward through the head. It is unnecessary to set out the facts and circumstances introduced by appellant in support of this theory, as the judgment must be affirmed if there is any substantial evidence in the record to support the verdict of the jury. It was next to impossible for the two wounds, as discovered in the deceased's head, to have been self-inflicted. We think the most reasonable inference to be drawn from the character of the two wounds is that they were not self-inflicted, but were inflicted by another. After drawing this inference, there is ample testimony in the record to connect appellant with the crime. The fact that he possessed a .32 caliber Winchester rifle tends strongly to connect him with the crime, as the bullet extracted from the deceased's head was about the same weight of a .32 Winchester bullet. Appellant's conflicting statements, and the fact that he fled and lived under an assumed name until arrested, are circumstances tending to connect him with the crime. The evidence was legally sufficient to sustain the verdict and judgment.

No error appearing, the judgment is affirmed.