## JOHNSON *v.* STATE.

### Opinion delivered May 24, 1926.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of voluntary manslaughter.

2. HOMICIDE—INSTRUCTIONS AS TO SELF-DEFENSE.—An instruction as to self-defense is not open to a general objection that it fails to state that accused had the right to act upon the appearance of danger to herself and not as it appeared to the jurors, especially where another instruction contained such a statement.

3. WITNESS—EXAMINATION.—It was within the court's discretion to refuse to permit counsel for accused to repeat, on redirect exami-nation, questions in varying form which had been propounded on direct examination.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

*Brundidge & Neelly,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

HART, J.   Trudy Johnson prosecutes this appeal to reverse a judgment of conviction against her for manslaughter.

On Sunday evening of the 24th day of January, 1926, Trudy Johnson engaged in a difficulty with Lillie Davis, near the depot at Kensett, in White County, Arkansas, and killed her by cutting her with a knife.

According to the testimony of one of the witnesses for the State, Lillie Davis passed by Trudy Johnson at the station at Kensett, in White County, Arkansas, and Trudy said, "You had just as well come on across; I am going to ask you." The witness did not know what Trudy was talking about, and Lillie did not answer her. Lillie went on into the station, and Trudy walked in behind her. When they got into the station, Trudy said, "I heard some cow was going to pull my hair." Lillie Davis did not reply to this. When the parties first met, Trudy Johnson had an open knife in her hand, and had it hid under her coat.

According to the testimony of another witness for the State, she heard Trudy Johnson say to Lillie Davis, in the waiting-room at the station, that if any one wanted to pull her hair she was there. Lillie Davis did not reply. The parties then left the waiting-room and went out on the station platform. Trudy Johnson and Lillie Davis commenced to strike each other. When the last lick was passed, Trudy backed up and said: "Oh yes, you thought I was by myself." The witness did not see anything in the hand of Lillie Davis. After Trudy struck Lillie the last time, the latter walked four or five steps, and fell. She died soon afterwards. This witness did not know who struck the first lick. Four or five licks passed. Lillie struck Trudy two licks, and Trudy struck Lillie two or three licks.

According to the testimony of another witness for the State, he heard one of the parties ask the other what she was going to do about it, and the latter then asked the former what she was going to do. Lillie Davis was the larger of the two women, and hit Trudy Johnson first.

Trudy Johnson fell back, and then rushed back to Lillie Davis and struck her. She struck her three times. Then Lillie Davis started to walk off. Trudy Johnson ran away after striking Lillie Davis the third time.

On cross-examination this witness said that Lillie Davis struck Trudy Johnson with her fist, and that Trudy staggered back. Trudy Johnson straightened up, and then began to strike at Lillie Davis. She struck her three times. Lillie Davis struck at Trudy the second time, but the witness does not know whether or not she hit her. Trudy Johnson was stabbing Lillie Davis with a knife while she was striking at her. Lillie Davis had one cut on the face, and was stabbed in the left breast. She died in a few minutes after she was stabbed with the knife by Trudy Johnson.

According to the evidence for the defendant, she was a small woman, weighing about 115 pounds, and Lillie Davis was a large woman, weighing about 175 pounds. Both of them were colored, and most of the witnesses are colored people. According to the testimony of Trudy Johnson, Lillie Davis called her a whore, and struck her twice before she struck back. She was staggered by the blow of Lillie Davis, and, happening to remember that she had in her pocket a knife with which she had been picking out nuts, she pulled it out and stabbed Lillie Davis for the purpose of protecting herself. The defendant cut Lillie Davis with a knife because she thought that Lillie Davis had a knife in her hand and was trying to cut her with it.

The jury returned a verdict of guilty of manslaughter, and fixed the punishment of the defendant at five years in the penitentiary.

It is not necessary to discuss or review the evidence. A mere recital of the substance of the evidence for the State shows that it fully warranted the verdict of the jury. It is earnestly insisted, however, by counsel for the defendant that the court erred in giving instruction No. 4, which reads as follows:

"You are instructed that no one resisting an assault made upon her in the course of a sudden brawl or quarrel, or upon a sudden encounter, or in a combat in a sudden quarrel, or from anger suddenly aroused at the time it is made, is justified in taking the life of the assailant, unless she is so endangered by such assault as to make it necessary to kill the assailant to save her own life or to prevent a great bodily injury, and she employed all the means in her power, consistent with her safety, to avoid the danger and avert the necessity of the killing. The danger must apparently be imminent and actual, and she must exhaust all means within her power, consistent with her safety, to protect herself, and the killing must be necessary to avoid the danger. If, however, the assault is so fierce as to make it apparently as dangerous for her to retreat as to stand, it is not her duty to retreat, but she may stand her ground, and, if necessary to save her own life or to prevent a great bodily injury, slay her assailant."

It is insisted that the instruction is erroneous because it does not in any part of it provide that the accused might act upon what might reasonably appear to her, from the circumstances surrounding her, to be her danger at the time she stabbed the deceased with her knife.

It is true that we have many times held that the right of an individual to fight in self-defense arises from his belief for the necessity of it, and not from the belief of the jury as to the necessity for it. *Smith* v. *State,* 59 Ark. 132, and *Scroggin* v. *State,* 109 Ark. 510, and cases cited.

In this connection, however, it may be stated that the court gave instruction No. 3, which reads as follows:

"You are instructed that the right of self-defense is founded solely on the principle of necessity, and before this plea is available in this case it must have appeared to the defendant, acting without fault or carelessness on her part, not only that danger to her at the hands of deceased was imminent, but that it was so pressing and

urgent that, to save herself from immediate death or great bodily harm at the hands of the deceased, the killing of the deceased was necessary."

It will be observed that in this instruction the jury is expressly told that the defendant might act upon the appearance of danger to herself. Instructions Nos. 3 and 4 were given together, and the court is not required to declare the whole law in one instruction. When the two instructions are considered and read together, they bring the case within the rule announced in *George* v. *State,* 148 Ark. 638, and other decisions of this court on the question.

In this connection it may be stated that a general objection was made to the instruction, and, if counsel for the defendant thought that it would tend to confuse or mislead the jury in the respect now complained of, they should have made a specific objection to the instruction, and doubtless the court would have inserted a clause in it that the defendant had a right to act upon the appearance of danger to herself, and not as it appeared to the jury. See *Youngblood* v. *State,* 161 Ark. 144.

What we have said with regard to instruction No. 4 applies with equal force to the objection made to instruction No. 5 given on behalf of the State, and we do not deem it necessary to set out instruction No. 5 in the opinion.

A reversal of the judgment is also asked upon the failure of the court to give three instructions requested by the defendant. We do not deem it necessary to set out these instructions. They are either argumentative in form, or were fully covered by the instructions given by the court.

In this connection it may be stated that the defendant was indicted for murder in the first degree, and the court expressly told the jury that the evidence was not sufficient to sustain either murder in the first degree or murder in the second degree. The court then proceeded to read the statute defining manslaughter, and fully and

fairly covered the respective theories of the State and of the defendant upon this phase of the case.

The jury was also fully instructed upon the subject of self-defense and of reasonable doubt. In our opinion no prejudice could have resulted to the defendant from the instructions given by the court, or in refusing those asked by the defendant.

It is next insisted that the court erred in the exclusion of testimony. This assignment of error is predicated upon a colloquy between the court and one of the counsel for the defendant during the examination of a witness for the defendant. After the witness had been examined by counsel for the defendant and cross-examined by the prosecuting attorney, the witness was again subjected to a redirect examination by counsel for the defendant. We copy from the examination of the witness by counsel for the defendant the following:

"Q. Do I understand you to tell the jury that when Lillie Davis hit Trudy, Trudy staggered back—is that right? A. Yes sir. Q. And that Lillie Davis followed her up? Mr. Yingling: That is not what she says now. Court: The objection is sustained. Q. State what Lillie Davis did after she hit Trudy? A. When she hit Trudy the first time and Trudy staggered back? Q. Yes, what did Lillie Davis do then? A. Lillie Davis went up on her. Q. Now, that is what I said. Court: You put it in her mouth. Mr. Brundidge: I didn't put it in her mouth, if the court please. The Court: The court heard the suggestion put in the witness' mouth, and the jury will disregard that answer. Mr. Brundidge: Save my exceptions, if the court please. I want to say this to the court: I have never put anything in that witness' mouth. Court: Sit down, sit down; don't say any more. Mr. Brundidge: I want to be respectful to the court, but I want the court at the same time to be respectful to me. Court (vigorously pounding with gavel): I asked you respectfully to please sit down. Mr. Brundidge: I want the court to treat me properly. I except."

On re-cross examination the witness again stated that Lillie ran into Trudy and struck her, and that she did not know whether Lillie had a knife or not. She had already been permitted to testify, in direct examination and upon cross-examination, the details of the difficulty as she saw them. She was permitted to state that Lillie Davis hit Trudy Johnson first, and then that they both began to strike each other. The witness stated several times that Lillie Davis hit Trudy Johnson first.

The jury could not have been misled by the action of the court, and the ruling of the court simply means that an objection was sustained to the form in which the question was being asked the witness after she had already stated in detail just how the difficulty began and ended. It was a matter within the sound discretion of the court not to allow counsel for the defendant to repeat the same questions in varying form. In other words, it was within the discretion of the court to refuse to permit questions of the same purport as those already asked to be repeated. *Greathouse* v. *State,* 166 Ark. 206.

We find no reversible error in the record, and the judgment will therefore be affirmed.