CRAWFORD *v.* STATE.

Opinion delivered October 1, 1928.

*Lee & Moore* and *Ross Mathis*, for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McHANEY, J. Appellant was convicted upon a charge of murder in the first degree and sentenced to death for the killing of his mother-in-law, Mrs. Minnie May Chitty, on December 20, 1927. According to the evidence for the State, the killing was wholly unwarranted and unprovoked. The defendant contended that he shot the deceased after a murderous assault made upon him by the deceased with a stick of stovewood, without provocation, and after she had knocked him down and was attempting further to strike him.

His first assignment of error is that the court committed reversible error in its refusal to give his requested instructions Nos. 4 and 6, which are as follows:

Instruction No. 4: "If you find that the deceased made an assault upon the defendant, without fault or carelessness on the part of the defendant, and that the assault was so fierce and violent as apparently to make it (as) dangerous for the defendant to retreat as to stand, then it was not the duty of the defendant to retreat, and he had the right to stand his ground, and, if necessary to save his own life or to prevent a great bodily injury to himself, to slay his assailant."

Instruction No. 6: "If you find from the evidence that the deceased, Mrs. Chitty, made an assault upon the defendant, Dewey Crawford, which was so fierce and violent as to make the defendant believe he was in danger of losing his life or suffering great bodily harm, then you are instructed that the defendant was not bound to retreat, but that he had the right to act in his self-defense until the danger was over."

It is said that, in the cross-examination of appellant, it was attempted to be shown by appellant himself that

he could have retreated without shooting the deceased, and that numerous questions were asked by counsel for the State which tended to ridicule appellant's contention that he could not retreat. The killing was admitted, and appellant interposed the plea of self-defense in justification thereof.

Section 2375, C. & M. Digest, provides: "In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given."

The court gave, at appellant's request, instruction No. 2, which, after explaining to the jury the essential difference between murder and manslaughter, says: "It will not be necessary for you to distinguish between the different degrees of murder or between murder and manslaughter, if you find that the defendant acted in self-defense, and killed the deceased after she had made an attack upon him, which was not provoked by him and without fault or carelessness on his part, and if he killed the deceased because of an honest belief, as a reasonable man, that there was an urgent and pressing danger of losing his life or suffering great bodily injury, and shot to protect himself in this belief."

Again the court repeated the same idea at the request of appellant in instructions 11, 12 and 13, instruction No. 13 being as follows: "You are instructed that, in arriving at a decision as to whether or not the defendant, Dewey Crawford, shot the deceased, Mrs. Chitty, in the honest belief that he was about to suffer death or great bodily injury at her hands, and without fault or carelessness on his part, you will try to form in your own mind a picture of the killing and see the circumstances as they appeared before the defendant, and not as they may now appear to you; and if you find from the evidence that the defendant, at the time of the killing, without fault or

carelessness on his part, honestly believed that he was in great danger of losing his life or of suffering great bodily injury at the hands of the deceased, Mrs. Chitty, and shot her in this belief, then you will return a verdict of not guilty, even though you should find now that there was in fact no actual danger of his losing his life or suffering great bodily injury at her hands.''

The court fully instructed the jury on presumption of innocence, the burden of proof, and reasonable doubt.

We think there was no error therefore in the refusal to give the above instructions. Instruction No. 4 is subject to the criticism made of a similar instruction in the recent case of *Stoddard* v. *State,* 169 Ark. 602, 276 S. W. 358. However, instruction No. 6 is not subject to the same criticism, and might, under proper circumstances, be a correct declaration of the law on the question of appellant's duty to retreat. The court had already instructed the jury in the language of § 2375, C. & M. Digest, and repeated the matter in the instructions above mentioned at the request of appellant more than once.

Self-defense can only be interposed where the person killed was the assailant, or where the slayer, having brought on the difficulty and being himself the aggressor, had really and in good faith endeavored to withdraw from the contest or controversy before the killing. If the person killed is the assailant, and it appears to the defendant that the danger is so urgent and pressing that it is necessary to kill the assailant in order to prevent his receiving great bodily injury, then he may do so without retreating. But, if he brings on the difficulty himself, is the aggressor, then he must in good faith endeavor to decline any further contest, in other words, retreat or withdraw, before he is entitled to the plea of self-defense, and then only under the same conditions as to the urgent and pressing necessity for killing. Therefore, according to his own statement, appellant was not the aggressor, was not under duty to retreat, and on his own theory of the case was not entitled to either of said instructions in addition to those heretofore mentioned as having been

given. As already stated, the court fully instructed the jury on the law of self-defense, and in language so plain that the jury could not have misunderstood it. We therefore overrule appellant's contention in this regard.

Appellant next insists that the court erred in refusing to give his requested instruction No. 3, as follows:

"You are instructed that, if you find that any statements were made by the deceased in regard to the defendant that might be construed as threats against the defendant, then you would have a right to consider such statements or threats as showing the frame of mind of the defendant and as bearing upon the question of who was the probable aggressor."

The court gave an instruction on the law of threats, stating, in substance, that it was competent for the defendant to show that threats had been made against him; that threats against a person will not justify an assault or the taking of life of a person unless, at the time of the assault or taking the life, the person making the threats does some act indicating that he is about to carry his threats into execution; that they should be considered in determining whether or not he was in such danger as required the exercise of his right of self-defense, But, if they are made, they should be considered only by the jury in determining who was the probable aggressor in the difficulty. Appellant's requested instruction was not correct, for the reason that it did not distinguish between communicated and uncommunicated threats, but applied to all threats generally. It was therefore not a correct declaration of the law as requested, as an uncommunicated threat could not throw any light on the frame of mind of the defendant. No objection or exception was made to the court's charge on threats, and, not having asked a correct instruction thereon, he is in no position to complain.

It is next insisted that it was error for the court to give § 2342, C. & M. Digest, as an instruction, without following it with a statement that the burden of proof on the whole case was on the State, and notwithstanding

§ 2342, it was sufficient if the evidence in behalf of appellant created a reasonable doubt of his guilt. Only a general objection was raised against this instruction, and if appellant thought the court should have added thereto in the manner above indicated, he should have requested the court to do so. As already stated, the court fully instructed the jury on the burden of proof, reasonable doubt, and presumption of innocence, and we therefore overrule appellant's contention in this regard.

It is finally insisted that the verdict of the jury was clearly excessive, as the evidence does not show the elements of murder in the first degree. It is said that the evidence in behalf of the State did not warrant the death penalty. As heretofore stated, the testimony on behalf of the State showed a willful, deliberate and malicious killing, which was entirely unprovoked; that on behalf of the defendant, that he was justified therein. This was a question for the jury, and, under the settled rule of this court, the verdict must stand if supported by any substantial testimony. It is also said that the verdict was dictated by passion and prejudice, but we find nothing in the record to justify this statement. The trial court was present, saw the witnesses on the stand, heard them testify, and was in better position to judge of this matter than this court. By his action in overruling the motion for a new trial, he has said, in effect, that no such condition existed, and we do not feel justified in setting the verdict aside on this ground. We find no error, and the judgment is affirmed.