CREWS v. STATE.

Opinion delivered March 4, 1929.

*O. A. Graves* and *L. F. Monroe,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert E. Smith,* Assistant, for appellee.

HART, C. J.  Jim Crews was indicted for murder in the first degree, and convicted of murder in the second degree by a petit jury, which fixed his punishment at fifteen years in the State Penitentiary.

It is first insisted that the judgment should be reversed because the court erred in not sustaining a de-

murrer to the indictment on the ground that it was defective in charging the offense in the same count to have been committed by different means or manner. The indictment charges the defendant with murder in the first degree by killing Dug Rowls by shooting him with a pistol, and by stomping him in the face and on the head and in the side, and by crushing his skull by means of said stomping. Some offenses are of a nature to be committed by one or another of several different ways or by different means. In such a case both means or ways may be charged in one count of an indictment. Proof that any of the means were used proves the offense, and proof that all the means were used proves no more. *Franklin* v. *State,* 153 Ark. 536, 240 S. W. 708.

The next assignment of error is that the evidence is not legally sufficient to support the verdict. According to the evidence for the State, J. R. Crews killed Dug Rowls about seven o'clock in the evening on May 19, 1928, in the Rocky Mound Community in Hempstead County, Arkansas. Rowls and wife and thirteen-year-old son were making a crop on the farm of J. R. Crews, and lived in the house with him. The house had three rooms on one side of the hall, in which Rowls and his family lived, and two rooms on the other side of the hall, in which Crews lived. W. M. Stuckey, aged sixty-nine, lived in a tent about one hundred yards north of the Crews house. On the afternoon of the killing Rowls worked on a cultivator awhile, and then went hunting. Crews and Stuckey went to Hope. They got back about six o'clock in the evening, and Stuckey stopped at his tent. Crews went on to the house, and began talking with Rowls in an ordinary tone of voice. Mrs. Rowls was in the kitchen getting supper, and heard them talking. They began to talk louder, and she went out into the hall to see what was the trouble. Rowls started to turn to go back towards the kitchen, and Crews drew a pistol from his pocket, and shot him in the breast. Rowls fell on a trunk in the hall, and could not get up. Crews then grabbed him, and said that he was going to kill him. Mrs.

Rowls tried to separate them, but could not do it. She then called Stuckey, who came into the house. When Stuckey came in, he pulled something out of his pocket and hit Rowls over the head. Stuckey and Crews kept beating Rowls until he was about dead, and then dragged him into his bedroom and threw him on the bed. They kicked and stomped Rowls until he was dead, and then Crews shot him in the head. Crews and Stuckey then threatened to kill Mrs. Rowls and her little son if they did not testify that Crews acted in self-defense in killing Rowls. They told her what to say when the officers came. The above was substantially the evidence of Mrs. Dug Rowls, which was corroborated by her thirteen-year-old son.

On cross-examination, the witness testified that her husband and the defendant were good friends before the killing. She said that she did not tell the officers the truth about the killing, because she was afraid to. She admitted telling them that her husband shot the defendant first with a shotgun. Her little son also claimed that he had been threatened into making the same statement to the officers about the killing. He testified that he heard nothing before the first shot was fired, and said that when he and his mother went to the kitchen door, the defendant had deceased in his arms, trying to shoot him in the head with a pistol. The deceased had nothing in his hands. When his mother called Stuckey to help them, the latter came, and helped the defendant in stomping and beating the deceased. The deceased was lying on the floor, with his feet under the bed, when the defendant shot him through the head. After they had killed the deceased, they commenced planning how they would show that the deceased had a shotgun and that the defendant killed him because the deceased was endeavoring to shoot him with the shotgun.

There was no proof that the walls or ceiling of the house showed that a shotgun had been fired.

According to the testimony of the defendant and of Stuckey, the deceased first fired at the defendant with a

shotgun, and the defendant killed the deceased in his own self-defense. It is not necessary to abstract the evidence adduced by the defendant, because, under our rules of practice, the jury was the judge of the credibility of the witnesses, and, if it believed the evidence for the State, was fully warranted in finding the defendant guilty. *Fields* v. *State,* 154 Ark. 188, 241 S. W. 901; *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386; and *Stepp* v. *State,* 170 Ark. 1061, 282 S. W. 684.

The next assignment of error is that the court erred in refusing to allow the defendant to testify as to some trouble which had occurred between him and the deceased about twenty years before the killing. The defendant offered to testify that he had a difficulty with the deceased at that time, in which the deceased hit him over the head with some brass knucks, and also shot at him twice. We do not think the court erred in excluding this testimony from the jury. It occurred twenty years before the killing, and the undisputed evidence in the record shows that the deceased and the defendant were on good terms at the time of the killing. They lived in the same house, and were friendly. Uncommunicated threats are admissible in a homicide case as tending to show who was the aggressor when that point is in doubt, but when they are too remote in point of time to have any bearing on that question, they are not admissible. *Turner* v. *State,* 128 Ark. 525, 195 S. W. 5; *Cochrell* v. *State,* 148 Ark. 256, 229 S. W. 733; and *Crafford* v. *State,* 169 Ark. 225, 273 S. W. 13.

The next assignment of error is that the court erred in giving instruction No. 9, which reads as follows:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless, by proof on the part of the prosecution, it is sufficiently manifest that the offense only amounted to manslaughter, or that the accused was justified or excused in committing the homicide, provided you find from the evidence on the

whole case, beyond a reasonable doubt, that the defendant is guilty.''

Counsel for the defendant claims that the instruction as given places the burden in the whole case on the defendant. We do not think so. The undisputed evidence in the record shows that the defendant killed the deceased. The defendant, in his own testimony, admitted killing him, and the only conflict is as to who was the aggressor. Other instructions were given by the court, in which the jury was told that it devolves upon the State to prove the guilt of the defendant beyond a reasonable doubt. All of the instructions are to be read together, and we cannot see how any jury of intelligent men could have been misled by the giving of the instruction complained of. The instruction is substantially in the language of our statute on the subject, and is similar to one approved in other cases by this court. *Smith* v. *State,* 139 Ark. 356, 213 S. W. 403; *Maddox* v. *State,* 155 Ark. 20, 243 S. W. 853; and *Beeson* v. *State,* 166 Ark. 142, 265 S. W. 956.

The next assignment of error is that the court erred in giving instruction No. 10, which reads as follows:

''In ordinary cases of one person killing another in self-defense it must appear to the defendant, acting without fault or carelessness on his part, that the danger was so urgent and pressing that, in order to save his own life, or prevent his receiving great bodily harm or injury, the killing was necessary; and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow was given.''

It is claimed that the instruction is erroneous in not continuing with the words, ''provided the slayer brought on the killing by voluntarily entering into it.'' We do not think this clause was necessary. The instruction deals with the appearance of danger to the defendant, and then tells the jury that it must also appear that the person killed was the assailant, or that the slayer had really in good faith endeavored to decline any further

contest before the mortal blow was given. The concluding part of the instruction makes it the duty of the defendant, if he was the aggressor in the difficulty, to endeavor in good faith to retire from the contest before he could invoke the law of self-defense. On the other hand, it plainly gives him the right to act upon the appearance of danger in killing the deceased if the latter was the assailant and continued to be the aggressor throughout the difficulty. *George* v. *State,* 148 Ark. 638, 231 S. W. 9, and *Johnson* v. *State,* 171 Ark. 203, 284 S. W. 28.

In this connection we call attention to the fact that instruction No. 11 on the part of the State reads as follows:

"If you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, armed with a deadly weapon, voluntarily entered into the difficulty with the deceased, with the felonious intent to take his life, then the defendant cannot invoke the law of self-defense, no matter how imminent the peril in which he found himself placed, unless the defendant abandoned or attempted to abandon the difficulty before the fatal shot was fired."

This instruction immediately follows instruction No. 10, and the two instructions are so intimately connected with each other that no jury of common sense could have been misled by what the court meant. It cannot be reasonably supposed that the jury would find one way or the other without any evidence to support their finding, or that they could have misunderstood the question the court was endeavoring to submit to them.

Finally, it is insisted that the court erred in giving instruction No. 19, which reads as follows:

"You are instructed that, although you may believe that the defendant, Jim Crews, fired the first shot in necessary self-defense, still, if you believe that the second shot was fired at a time when the defendant, as a reasonably prudent person, acting on the facts and circumstances, without fault or carelessness on his part, did not

honestly believe that it was necessary to further defend himself, then the defendant would be guilty of murder in the first degree, or murder in the second degree, or manslaughter, provided you believe that the second shot contributed in any manner to the death of the deceased.''

The evidence on the part of the State tended to show that the defendant fired the first shot, and that, after the first shot was fired, the defendant grabbed hold of the deceased and tried to shoot him with a pistol. Then Stuckey and the defendant stomped and beat the deceased over the head, and the defendant again shot him with a pistol. The jury was warranted in finding that this was done by the defendant at a time when the deceased was not trying to hurt him and when in no condition to do so. Hence we do not think that the court erred in giving this instruction to the jury. *Lassiter* v. *State,* 137 Ark. 273, 208 S. W. 21, and *Crawford* v. *State,* 171 Ark. 1108, 9 S. W. (2d) 800.

We have carefully considered the instructions given by the court as a whole, and find that they fully and fairly submitted the disputed issues of fact to the jury, according to the principles of law which have been repeatedly decided by this court. The matters and issues in the instructions submitted by the defendant and refused by the court were fully and correctly covered by the instructions given at the request of the State.

We find no reversible error in the record, and the judgment will be affirmed.