JUNIOR *v.* STATE.

4649                                    236 S. W. 2d 1016

Opinion delivered March 5, 1951.

*Oscar Barnett,* for appellant.

*Ike Murry,* Attorney General, *Robert Downie,* Assistant Attorney General and *R. Ben Allen,* Special Assistant Attorney General, for appellee.

PAUL WARD, J. Appellant, R. T. Junior, was indicted for assault with intent to kill one George Matlock with a single barrel shotgun on September 17, 1949. He was tried and found guilty by the jury and sentenced to two years imprisonment. In appellant's motion for a new trial three principal grounds for a reversal are set forth, which will be discussed later.

The material facts are as follows. On the date in question, which was a Saturday, George Matlock, the prosecuting witness, had been in Hot Springs where according to his statement he had purchased a half pint of liquor and returned to Malvern in the afternoon. After calling at the homes of some of his friends he went to the home of Deak Mixon about five or six o'clock that afternoon. At Mixon's home at that time there were his wife, Hattie Mixon, his daughter, Mary Mixon, and one Grady Mixon. The defendant was either at the Mixon home at the time or came in soon after George Matlock arrived. In a short time Matlock and the defendant became engaged in a fuss or an argument, apparently because Matlock gave some of those present a drink of liquor, but refused to give the defendant a drink. Although Matlock denies it, some of those present insisted that Matlock had a knife and threatened the defendant and then threatened to go get a gun to kill him. At any rate Matlock left the Mixon home and, according to his statement, went to the home of his cousin, Buster Matlock. The shooting occurred a little while later around the

hour of seven-thirty or eight o'clock when George Matlock and the defendant met on the road or street somewhere between the Mixon home and Buster Matlock's home. At the time of the shooting no one was present except the two parties mentioned, and they gave different versions. Defendant claims that Matlock, with his hand behind him, was advancing on defendant and the shot was fired after Matlock failed to halt. The evidence does not disclose that Matlock had a gun, but it was testified by one witness that a knife was found the next morning at the scene of the shooting and that it looked like the knife which Matlock had at the Mixon home. ·

The first ground upon which appellant seeks a reversal is that there is not sufficient evidence to support the verdict of the jury. With this we cannot agree.

The second ground of contention is that the court erred in excluding certain testimony. Hattie Mixon, a witness for the defendant, in rebuttal was not allowed to answer a certain question asked by appellant's attorney, and it is insisted that the court committed error in refusing to allow her to answer.

"Q. Did you see him (Buster Matlock) up there the night that George and Junior had the difficulty?

"A. Yes, I seen him up there.

"Q. Did he make some statement about George?

"Mr. McClellan: To which I object it is hearsay evidence.

"The Court: Objection sustained.

"Mr. Barnett: If the court please, I am offering this corroboration of what the witness himself (Buster Matlock) said there on the witness stand."

Buster Matlock testified that he saw George Matlock before the shooting and that George had asked him if he had a gun. We think the court committed no error. In the first place the evidence does not show that this information was ever communicated to the defendant, and in the second place if Buster Matlock's statements were true

it would have been no corroboration to allow Hattie Mixon to answer, since all information came from the same source—Buster Matlock. Furthermore, the defendant did not show what the answer would have been.

Appellant contends finally that the court erred in refusing to give defendant's Instruction No. One, and also erred in giving one instruction it did give. Both instructions relate to self-defense and will be considered together.

Appellant's Instruction No. One which was refused by the court is set out below:

"The Court instructs the jury that if you find and believe from the evidence that defendant had good reason to believe, from the words, acts and conduct of George Matlock, that the said George Matlock had a design to do defendant some great personal injury or bodily harm, and that defendant had reasonable cause to believe there was imminent danger that such design was about to be accomplished, then defendant had a right to act on appearance, and shoot the said George Matlock to prevent accomplishment of such design, even though said shooting resulted in the death or damage to said George Matlock.

"In this connection you are further instructed that the law did not require the defendant to retreat or wait until the said George Matlock actually attacked him, nor was the defendant required to nicely gauge the force used, but that he could use any means for his protection that appeared reasonably necessary under the circumstances; neither is it necessary that defendant's danger should have been real or actual, or that it should have been pending or about to fall, but if defendant had reasonable cause to believe, and did believe these facts and that he shot George Matlock to prevent such expected harm, then you must acquit the defendant on the grounds of self-defense, even though you may believe the said George Matlock did not intend to do the defendant any personal injury or bodily harm."

Conceding, without deciding, the above is a correct statement of the law it is our view that the court gave

other instructions which were proper and covered the matters contained in the requested instruction. The following are excerpts from the court's instructions.

"The defendant cannot be convicted of assault with intent to kill if you find he acted in necessary self-defense of his person, or acted in a sudden heat of passion upon a provocation apparently sufficient to make the passion irresistible. If you find that he acted in necessary self-defense, he would be justifiable.

\* \* \* \* \*

"If you believe from the evidence that the defendant, without any fault or negligence on his part, was himself assaulted by the prosecuting witness with such violence as to make it appear to the defendant at the time, while he was acting without fault or carelessness on his part in coming to such conclusion that the prosecuting witness manifestly intended and endeavored to kill him, or to do him great bodily harm, and that the danger was imminent and impending, then, in that case, you are instructed that the defendant was not bound to retreat, but had the right to stand his ground under such circumstances and to repel any force with force, and if need be, kill his adversary to save his own life or prevent his receiving great bodily injury."

Appellant's objection to the court's instructions was general and we find no error in the instructions as given.

For the reasons given the judgment of the lower court is affirmed.

ROBINSON, J., dissenting. By having refused to give Instruction No. 1 requested by the defendant, but having given the last instruction set out in the majority opinion, the Court told the jury without qualification: "If you believe from the evidence that the defendant without any fault or negligence on his part *was himself assaulted by the prosecuting witness with such violence* . . ." (Italics ours).

Thus, according to the law as announced by the trial court and which is being approved by this Court, one has

to be actually assaulted with violence before he is justified in taking whatever action he honestly believes, without fault or carelessness on his part, is necessary to save his own life, or to protect himself from great bodily injury. It is true the trial court also told the jury that the defendant could not be convicted if he acted in necessary self-defense, but further told the jury that the defendant had to be actually assaulted with violence before he could act in necessary self-defense.

There is evidence in this case that prior to the shooting, the prosecuting witness had attempted to cut the defendant with a knife, and when he was not able to catch the defendant after running him around the house, the prosecuting witness went to get a gun and did try to get a gun from his cousin. According to the evidence the defendant did not know but that the prosecuting witness had obtained a gun.

Up to this hour, without exception, this Court has held that the defendant is justified in acting, in this kind of a situation, as it honestly appears to him, without fault or carelessness on his part, to be necessary to save his own life or protect himself from great bodily harm. One of the leading cases on the subject is that of *Smith* v. *State,* 59 Ark. 132, 26 S. W. 712, wherein this Court said:

"The instruction of the court upon the right of self-defense is not correct. It is true that, in ordinary cases of one killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary. But, to whom must it appear that the danger was urgent and pressing? According to reason and the weight of authority, it must so appear to the defendant. To be justified, however, in acting upon the facts as they appear to him, he must honestly believe, without fault or carelessness on his part, that the danger is so urgent and pressing that it is necessary to kill his assailant in order to save his own life, or to prevent his receiving a great bodily injury. He must act with due circumspection. If there is no danger, and his belief of the existence thereof be

imputable to negligence, he is not excused, however, honest the belief may be. 'The law,' says Judge CAMPBELL, of Michigan, 'does not hold men responsible for a knowledge of facts, unless their ignorance arises from fault or negligence.' "

This case has been cited with approval by this and other courts for more than half a century, being recently cited in the case of *Pendergrass* v. *New York Life Insurance Company,* 181 Fed. 2nd 136.

"It is true that we have many times held that the right of an individual to fight in self-defense arises from his belief for the necessity of it, and not from the belief of the jury as to the necessity of it." *Johnson* v. *State,* 171 Ark. 203, 284 S. W. 28.

"It is the apparent, and not the real or actual necessity of taking another's life to protect oneself from death or great bodily harm at the hands of the person killed, which controls the determination of the question whether the killing was justifiable or excusable as having been done in self-defense. Killing an assailant may be excusable although it turns out afterward that there was no actual danger." 26 Am. Jur. 251.

When the defendant has successfully avoided being cut with a knife by the prosecuting witness, the aggressor, who leaves with the stated intent of obtaining a gun, and does actually seek to borrow a gun, then the defendant, who has not been the aggressor, has not sought any difficulty and has not been drinking, but who honestly believes, without fault or carelessness on his part, that the prosecuting witness has obtained a gun and there is imminent danger of the prosecuting witness killing the defendant or causing him great bodily injury then the defendant should not have to wait until the aggressor actually commits the assault with violence before taking steps to protect himself.

For the reasons set out herein, I respectfully dissent.